946 F.2d 1143
 68 A.F.T.R.2d 91-5851, 91-2 USTC P 50,565
 UNITED STATES of America, Plaintiff-Appellant,
v.
Wendelyn WILKES, National Bank of Commerce of San Antonio,
Independent Executor of the Estate of Laura Mae McKeon,
National Bank of Commerce of San Antonio, Trustee of Betty
McKeon Due Trust Estate; and Betty McKeon Due, as
beneficiary of the Betty McKeon Due Trust Estate,
Defendants-Appellees.
 No. 91-5542
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 12, 1991.
 Gary R. Allen, Chief, Susan E. Buechley, Steven W. Parks, Robert W. Metzler, Appellate Section, Tax. Div., Dept. of Justice, Washington, D.C., Cynthia E. Messersmith, Dept. of Justice, Dallas, Tex., for plaintiff-appellant.
 George H. Spencer, Clemens & Spencer, Antonio, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before JONES, DUHE and WIENER, Circuit Judges.
 WIENER, Circuit Judge:
 
 
 1
 In this federal income tax case, the government appeals an adverse judgment by the district court which found for the taxpayers by reclassifying the government's suit as one to recover on an erroneous refund, and thus time-barred, rather than, as the government contended, a suit to reduce an assessment to judgment. Finding that the district court erred in its reclassification of the government's case, we reverse and render judgment against the taxpayers, but only in the net amount remaining due on the purported assessment after giving the taxpayer credit for all payments made and without allowing debits for the government's erroneous refunds.
 
 I.
 FACTS
 
 2
 The National Bank of Commerce of San Antonio served as independent executor of the Laura Mae McKeon Estate (the estate). It has been closed and its assets have been distributed to Betty McKeon Due and the Laura Mae McKeon Testamentary Trust. Since distribution, one of the bank's trust officers, Wendelyn Wilkes, has overseen the administration of the McKeon trust and of the Betty McKeon Due custody account, both of which hold assets received in distribution from the estate.
 
 
 3
 On July 12, 1982, while the estate was still open, the bank mailed the United States Fiduciary Income Tax Return, Form 1041, covering the estate's fiscal year ending March 31, 1982, showing total taxes due of $16,025.41. The estate elected to pay its income tax for that fiscal year in four equal quarterly installments, and included with the return a check in the amount of $4,006.37 in payment of the first installment. The Internal Revenue Service (IRS) received the return on July 15, 1982 and credited the estate's account for the amount of the installment.
 
 
 4
 In preparing the return, the estate inadvertently applied the wrong tax rate, causing the return to show an erroneous total tax due for the fiscal year. The correct amount of tax due was $16,243.58, not $16,025.41, as shown on the return. On September 13, 1982, the IRS issued a "Service Center Notice" to the estate, which showed the correct total tax due of $16,243.58, and a credit for the payment of the first installment of $4,006.37.
 
 
 5
 On October 15, 1982, the estate mailed another check for $4,006.37 to the IRS as the second quarterly installment payment. The IRS received that check and credited the estate's account on October 19, 1982. On the same day, the IRS also erroneously credited another, unrelated taxpayer's payment of $20,500 to the estate's account.
 
 
 6
 On January 11, 1983 the estate mailed a check to the IRS in the amount of $4,006.37. On April 14, 1983, the estate mailed a check to the IRS in the amount of $4,006.36. These checks represented the third and fourth quarterly installment payments for the income taxes due for the fiscal year ending March 31, 1982. The IRS received these checks and credited like amounts to the estate's account shortly after each check was mailed.
 
 
 7
 On June 13, 1983, the IRS issued a notice to the estate that there had been an overpayment of taxes for the period ending March 31, 1982 in the amount of $16,275.53, and that $1,662.51 of interest had accumulated on this amount. On the same day, the IRS sent a refund check to the estate in the amount of $17,938.04. The estate received these amounts on June 15, 1983.
 
 
 8
 On December 13, 1983, the IRS issued another refund check to the estate in the amount of $4,344.02, and the estate received the check on December 15, 1983. The estate did not request either of the two refund checks sent by the IRS, and the refunds were not the result of any claim filed by the estate.
 
 
 9
 On April 6, 1987, the IRS issued a notice to the estate informing it that $20,500.00 had been credited incorrectly to the estate's account and requesting payment of this amount. The estate received this notice, but did not pay the amount requested. On September 12, 1988, the IRS filed suit in the United States District Court for the Western District of Texas, seeking to reduce to judgment the purported unpaid balance of taxes in the amount of $16,243.58 on an assessment which the IRS asserts that it made on September 13, 1982 when it sent the "Service Center Notice" to the estate. The IRS bases its claim on Section 7403 of the Internal Revenue Code (the Code).[1]
 
 
 10
 The IRS filed a motion for summary judgment, claiming that on September 13, 1982 it assessed a tax in the amount of $16,243.58 (the correct amount owed by the estate for the fiscal year ending March 31, 1982), and that it timely filed its collection suit on September 12, 1988, within the six-year statute of limitations for collection of taxes following assessment, as set forth in Section 6502(a)(1) of the Code.[2]
 
 
 11
 In support of its motion, the IRS relied on two affidavits from Lorna Bradford, the Court Witness Coordinator for the Austin Compliance and Austin Service Centers. In these affidavits, Ms. Bradford stated that the Austin Service Center processed the estate's return and assessed the tax on September 13, 1982, and that the amount of tax assessed by the IRS was more than the tax reported on the return. Ms. Bradford also stated that whenever the IRS processed a return containing a math error, standard procedures called for the issuance of a notice of math error, which would have been mailed one to two weeks following the processing date. The IRS maintained that the assessment of the correct amount of tax, $16,243.58, occurred on September 13, 1982, and that neither the payments made by the estate, totalling $16,025.47, nor the amounts refunded to the estate by the IRS extinguished the assessment, thereby allowing the IRS to bring suit to reduce the assessment to judgment within the six-year statute of limitations, without resort to further assessment procedures.
 
 
 12
 The estate cross-moved for partial summary judgment, arguing that the true nature of the suit by the IRS was not to reduce an assessment to judgment, but to recover an erroneous refund sent by the IRS to the estate, and that such an action was barred by Section 6532(b) of the Code,[3] which requires the United States to file any suit for recovery of erroneous refunds "within 2 years after the making of such refund." Under that Code section, the estate argued, this suit had to be filed by the IRS no later than December 13, 1985. Specifically, the estate argued that the IRS mislabeled its action as a suit to reduce an assessment to judgment in an effort to evade the two year time bar to filing an erroneous refund suit.
 
 
 13
 The estate further argued in the alternative that a suit to reduce the assessment to judgment would not lie in the instant situation because the IRS never made a timely assessment, which is a prerequisite for bringing a suit under the six-year statute of limitations of Section 6502(a)(1) of the Code. Moreover, to be timely under Section 6501(a) of the Code, an assessment must be made within three years after a return is filed.[4]
 
 
 14
 The estate cited Section 6213(b)(1) of the Code,[5] upon which the IRS apparently relied, which provides that, in the case of a math error, an exception applies to the general rule that the IRS must send a notice of deficiency in order to assess a tax if a "taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due.... Each notice under this paragraph shall set forth the error alleged and an explanation thereof." The estate argues that the "Service Center Notice," which was the only document the estate admits to having received from the IRS, provided neither a description of the "error alleged" nor "an explanation thereof," thereby failing to qualify as an assessment under Section 6213(b) of the Code. In support of this point, the estate also filed the affidavit of Barbara Washburn, a trust officer and Vice President in the Trust Division of the Bank, who was personally responsible for handling and responding to all tax notices relating to the estate. Her affidavit stated that the estate never received a document in the form of a notice of math error as the IRS claimed it sent.
 
 
 15
 As yet another alternative, the estate argued that, even assuming the IRS sent a proper assessment to the estate on September 13, 1982, the estate timely paid all but $218.17 of the assessment,[6] thus extinguishing the tax liability to that extent, and that the erroneous refunds did not revive the portion of the liability already satisfied.
 
 
 16
 The district court denied the IRS' motion for summary judgment and granted the estate's motion for partial summary judgment. The court found that the true nature of the IRS' suit was to recover an erroneous refund, noting that when the IRS seeks to recover an erroneous refund it has but two courses of action. First, it may seek recovery under Section 7405 of the Code,[7] in which case, pursuant to Section 6532(b) of the Code, the IRS must bring such an action within two years after making the refund. Second, the IRS may make a new assessment and proceed under the Code's deficiency provisions, in which case, pursuant to Section 6501(a) of the Code, the new assessment must be made within three years after the filing of the return. As the IRS failed either to file a suit within the two-year statute of limitations to recover an erroneous refund, or to make a new assessment within the three-year limitation period, the district court dismissed the action against the estate. The court therefore did not reach the factual issue whether the estate ever received a notice of math error constituting an assessment as of September 13, 1982. The IRS timely appealed the decision of the district court.
 
 II.
 DISCUSSION
 This case comprises two central issues:
 
 17
 1) Is the true nature of this suit to recover an erroneous refund or to reduce a tax assessment to judgment?
 
 
 18
 2) If this suit is one to reduce a tax assessment to judgment, does there in fact exist a timely-made assessment which has not been extinguished and upon which such a suit can lie; and if so, what are the effects of the estate's installment payments and the government's erroneous refund payments?
 
 A. The True Nature of the Suit
 
 19
 As noted, the district court held that the true nature of this suit was not to reduce a tax assessment to judgment, but was instead a suit to recover an erroneous refund. As such, held the court, the suit was barred by the statutes of limitations found in Sections 6501(a) and 6532(b) of the Code. The district court relied on the unreported decision in United States v. Rosalynde A. Brown,[8] a case with facts similar to the case at bar. In Brown, the taxpayers filed a return and paid the tax in full. Later, the taxpayers filed for a refund in the amount of $184,626.26, which the IRS allowed. The IRS erroneously sent a refund check in the amount of $387,060.27. The IRS did not discover its mistake for two and one-half years, at which time it sent a notice to the taxpayers requesting payment of the excess refund. After the taxpayers refused to pay, the IRS filed suit. The IRS argued, as it does here, that although it failed to file suit within the two-year statute of limitations for erroneous refund suits, the suit was nonetheless timely under the six-year statute of limitations in Section 6502. The IRS insisted that the erroneous refund produced a deficiency or underpayment which did not require further assessment, and that in both form and substance the nature of the suit was to reduce the assessment to judgment for the purpose of collection.
 
 
 20
 The court in Brown found that, contrary to the arguments of the IRS, the realities revealed by the IRS' pleadings and stipulations of fact left no doubt but that the government was seeking to recover an erroneous refund. The court therefore treated the suit as such and held that the two-year statute of limitations barred the suit. The district court in the instant case held that the facts warranted the application of Brown, and determined that here too the IRS in fact seeks to recover an erroneous refund and must be barred from so doing by the two-year statute of limitations.
 
 
 21
 The IRS complains that the district court erred in treating this suit as an erroneous refund case. We agree. The court in Brown noted that the IRS actually pleaded an erroneous refund action but then attempted to argue another theory in an effort to avoid the consequences of the applicable statute of limitations. In this case, however, the IRS has maintained from the outset that the nature of this suit is to reduce a tax assessment to judgment. As distinguished from Brown, the position of the IRS in the instant case is bolstered by its pleadings and by the fact that the IRS does not seek the full amount of the erroneous refund, but only the lesser amount needed to cover the alleged assessment of September 13, 1982. Therefore, we will consider this suit as one for a judgment on an assessment and not one for recovery of an erroneous refund.
 
 
 22
 B. The Existence of an Unsatisfied Assessment
 
 
 23
 In order to prevail in a suit to reduce a tax assessment to judgment, the IRS must show that there does in fact exist a timely-made and unextinguished assessment. If, as the IRS asserts in this case, an assessment of $16,243.58 was made on September 13, 1982, the questions arise whether such assessment remained unsatisfied after the estate paid $16,025.47 and later received a refund of $22,282.06; and if so, in what amount.
 
 
 24
 Once the district court held that this suit was not one to reduce an assessment to judgment, it had no need to address the question whether the IRS validly made an assessment on September 13, 1982. But, finding as we do that this is properly a suit to reduce an assessment to judgment, the existence of an assessment is crucial. If no assessment ever existed, then obviously there is nothing to reduce to judgment and the IRS cannot prevail. Therefore, the logical starting point would seem to be with an analysis of the assessment issue. For reasons set forth below, however, we will pretermit that exercise and assume, without deciding, that the IRS made an assessment on September 13, 1982.
 
 
 25
 The IRS argues that when (1) it makes a timely assessment, (2) the taxpayer makes a partial payment, and (3) the IRS returns the amount paid because of an error not involving a redetermination of tax liability, the assessment remains outstanding and the IRS may collect under Section 7403. In particular, the IRS asserts that there is a distinction between a rebate refund (a situation in which the IRS returns part of an amount assessed and paid because of a redetermination of liability, as, for example, when an amended return is filed claiming an additional deduction) and a non-rebate refund (a situation in which the IRS returns a portion of an amount assessed and paid for a reason not based on a redetermination of liability, as, for example, when there is an erroneous credit to a taxpayer's account). The IRS recognizes that in the case of a rebate refund the assessment is reduced by the amount of the refund, thus requiring the use of deficiency procedures and a new assessment for any further attempts to collect the refunded amount. The IRS argues, however, that in the case of a non-rebate refund the assessment remains unpaid and may be collected by suit under Section 7403 of the Code, with no need for making a new assessment.
 
 
 26
 In support of this argument, the IRS relies on Groetzinger v. Commissioner.[9] That case involved estate rather than income taxes. An estate filed its estate tax return on April 16, 1971, reporting an estate tax due of $19,668.38. After an audit, the IRS assessed the estate a deficiency of $1,643.53, and the estate paid the total of $21,311.91 in full. The IRS later assessed a second deficiency of $2,456.00, which the estate also paid in full. The IRS committed an error in posting the payments, and in June of 1972 it refunded $19,667.74 to the estate, which sum the estate distributed to the beneficiaries of the estate and others. Each of two beneficiaries of the estate received $8,316.92 of the refunded amount. In March of 1976, the IRS issued notices of liability to the two beneficiaries for the portions of the erroneous refund directly traceable to them, and the beneficiaries promptly filed petitions in the Tax Court.
 
 
 27
 The IRS in Groetzinger contended that a deficiency existed within the meaning of Section 6211 of the Code,[10] and that the beneficiaries were liable for the deficiency as transferees of the estate under Section 6324 of the Code. The beneficiaries asserted that the Tax Court did not have jurisdiction to redetermine the liabilities involved. The court addressed the jurisdiction issue and noted that pursuant to Section 6901 of the Code,[11] a transferee's liability for any estate tax deficiency or underpayment must be assessed, paid and collected in the same manner as the taxes upon which the liability is based, and such a liability may be contested either in the Tax Court or Federal district court. Thus, the court stated, if there was a deficiency or underpayment for which the beneficiaries might be liable as transferees, the court had jurisdiction.
 
 
 28
 The Groetzinger court first determined that no deficiency existed. Section 6211(a) of the Code defines a deficiency as the amount by which the tax imposed exceeds: (1) the amount shown as a tax on the tax return, plus (2) amounts previously assessed as a deficiency, less (3) the amount of rebates. Section 6211(b)(2) of the Code defines a rebate as an abatement, credit, refund, or other repayment made on the ground that the tax imposed was less than the amount shown on the return and the amounts previously assessed or collected without assessment. As the reason for the refund in Groetzinger was an error in posting, the court concluded that the refund did not meet the definition of a rebate. Therefore, because a deficiency under Section 6211(a) of the Code can exist only when a rebate occurs, the refund did not create a deficiency.
 
 
 29
 Although the court in Groetzinger did not find the existence of a deficiency, it concluded that there was an underpayment within the meaning of Section 6901(b) of the Code. The court found that the estate had already paid its tax liability in full when the IRS issued the erroneous refund, but "when all of the financial transactions are viewed together, there [was] clearly an underpayment of tax" because the amount of tax due was not fully paid. Thus, the court held that it had jurisdiction under Section 6901 because the asserted liabilities had as their basis an underpayment of estate taxes.
 
 
 30
 The Groetzinger court went on to hold that Section 6324 of the Code imposed transferee liability on the beneficiaries for the estate tax refunds they had received. As evidenced by the underpayment of tax, the estate tax had not been paid when due. In addition, the refund amounts were includable in the gross estate, and, as the beneficiaries had received these refunds, they were liable under Section 6324 of the Code as transferees of the estate.
 
 
 31
 In the instant case, the IRS argues that an assessment is not eradicated or nullified by a payment that is subsequently returned, relying on Groetzinger' § finding that "when all of the financial transactions are viewed together, there [was] clearly an underpayment of tax"[12] for this assertion. The IRS urges this court to follow the Groetzinger court and view all of the financial transactions together to find that the alleged assessment made on September 13, 1982 remained in existence and was unpaid and collectible after the refund by the IRS to the estate. We disagree, finding Groetzinger significantly distinguishable from this case.
 
 
 32
 As the Groetzinger court stated, the only issues it faced were whether it had jurisdiction, and, if so, whether the beneficiaries were liable as transferees of the estate under Section 6324 of the Code.[13] In answering the jurisdictional question, the court analyzed Section 6901 of the Code, which gives the Tax Court jurisdiction over alleged liabilities of transferees of estate property for any deficiency or underpayment of estate tax. Thus, the court's finding that an underpayment existed, coupled with the court's "financial transactions" analysis in making this finding, served only to show that the jurisdictional requirements of Section 6901 of the Code had been met because there was an alleged liability based on an underpayment. The finding of an underpayment had no bearing on the merits of the issue of the beneficiaries' liability. Although the court in Groetzinger held the beneficiaries liable for the refunds they had received, the liabilities rested not on the mere existence of an underpayment, but on transferee liability under Section 6324 of the Code, clearly inapplicable in this case. For this reason, the Groetzinger court's finding of an "underpayment" does not support the IRS' argument here that to the extent an erroneous refund equals or exceeds an amount paid in satisfaction of an assessment, the refund continues (more accurately, revives) the taxpayer's liability for the assessment.
 
 
 33
 The weight of authority holds that once a taxpayer makes payment on a tax assessment, the payment extinguishes the assessment to the extent of payment, and subsequent refunds do not revive the assessment. In Rodriguez v. United States,[14] the IRS on May 19, 1978 assessed the taxpayers $24,609.84, which included taxes, penalties and interest for tax years 1968, 1970, and 1972. The IRS levied on real estate owned by the taxpayers and scheduled it for sale after giving notice and demand. But on October 22, 1981, the last day before the sale, the taxpayers redeemed the property by tendering $25,150, which included accrued interest, and the IRS accepted the payment.
 
 
 34
 When the IRS entered the payment into its computer, the entire amount of payment was entered only for the tax year 1972. The computer applied the correct amount to 1972, but applied $16,180.24 to tax year 1970, for which only $13,425.70 was due, and applied only $1,584.99 to tax year 1968, for which $4,334.99 was due. As a result, the IRS' records showed an overpayment for 1970 of $2,822.46 (including interest) and a balance due for 1968 of $2,750. On December 25, 1981, the IRS issued a refund check to the taxpayers for the 1970 "overpayment" of $2,822.46, which check the taxpayers negotiated. On July 28, 1982, the IRS levied on the taxpayers' bank account without giving additional notice of deficiency, demand for payment, or notice of levy.
 
 
 35
 The taxpayers brought suit alleging that the levy was void for failure to follow the necessary procedures for a levy. They contended that since they had paid the full amount of the assessment, the IRS could not levy on their property without notice, and that if they did owe any money, the IRS could recover only through a suit to recover an erroneous refund or by giving a new assessment, notice and demand. The IRS countered that, as the 1970 liability had been overpaid, the refund was not erroneous, and, as the 1968 liability had never been satisfied, no new notice of deficiency, assessment or demand for payment was necessary.
 
 
 36
 The Rodriguez court addressed the question whether the taxpayers' payment in redemption of the levied real estate had satisfied their tax liability, stating that if it had, it also extinguished the lien on the real estate. The court began by noting that "the issuance of a refund does not estop the IRS from later collection of an amount the taxpayer owes," but that the issue in this case was whether the taxpayers did in fact owe money, and if so, whether the IRS correctly followed statutory procedures to collect it.[15]
 
 
 37
 The IRS argued in Rodriguez that as the refund for 1970 was justified because of the overpayment appearing in the IRS's records, the 1968 liability continued unbroken because the taxes for 1968 were never paid. The court rejected this argument, noting that a refund is not a tax amount, which means that the sending of a refund cannot of itself revive a pre-existing tax liability.[16] The court concluded that because the IRS had at one time received funds from the taxpayers sufficient to satisfy the tax liability, the liability had been extinguished, so that the refund "[did] not extend the old liability, but at most [created] the potential for a new one."[17] Therefore, held the court, the IRS could attempt to recover the erroneous refund, but only by the means established by Congress. As the taxpayers had satisfied their liability and the refund was the result of an IRS posting error, the IRS could pursue collection only by an erroneous refund suit, or by the usual deficiency and assessment procedures. As the IRS had not complied with the statutory procedures for either method, the court held that the levy on the taxpayers' bank account was void.
 
 
 38
 In United States v. Young,[18] the IRS assessed a penalty against a taxpayer for the nonpayment of taxes in his individual capacity and filed a tax lien against the taxpayer. The taxpayer paid his individual tax liability in full, but the IRS mistakenly credited the payment to the taxpayer's sole proprietorship tax account, resulting in an overpayment of taxes in the sole proprietorship account. The IRS sent a refund check to the taxpayer for the amount paid plus accrued interest and subsequently released the tax lien of record. Nearly four years later, the IRS filed notice of a federal tax lien against all of the taxpayer's property and filed suit to recover the amount originally assessed against the taxpayer as a penalty, plus accrued interest.
 
 
 39
 The taxpayer argued that the suit was an attempt to collect an erroneous refund and that the two-year statute of limitations of Section 6532(b) barred the suit. The IRS claimed, as it does in the instant case, that the suit was one to collect on an overdue assessment, with an applicable limitations period of six years, as provided in Section 6502(a)(1). The court held that as the taxpayer had paid the assessment in full, the assessment had been satisfied, and the refund by the IRS did not revive it. Therefore, the court concluded, there was no assessment upon which to collect, meaning that the IRS could not maintain a suit to collect an assessment. Instead, the suit could only be one to recover an erroneous refund, which the two-year statute of limitations prohibited.
 
 
 40
 Rodriguez and Young establish the principle that as a taxpayer makes payment against a tax assessment, the assessment is extinguished in the amount paid and cannot be revived by the IRS's giving the taxpayer an unsolicited, erroneous refund. The same principle applies in this case, albeit the estate had not quite paid the purported assessment in full. Assuming, as we have throughout this discussion, that the IRS made an assessment of $16,243.58 on September 13, 1982, the estate extinguished the assessment to the extent of $16,025.47, the total of the four installments paid by the estate. The refund sent by the IRS as a result of a posting error did not revive the extinguished portion of the assessment. Thus, a suit to reduce the assessment to judgment, if successful, would allow the IRS to recover only $218.11, the remaining portion of the assessment.[19] The only avenues open to the IRS for recovery of the amount erroneously refunded to the estate would have been either to file a suit to recover an erroneous refund or to make a new assessment for the amount refunded. As the district court correctly found, the IRS failed to take either action within the required time limits, so it may not now recover the amount erroneously refunded.
 
 III.
 CONCLUSION
 
 41
 The district court erred in reclassifying the IRS' suit as one to collect an erroneous refund. The suit is, as cast, one to reduce an assessment to judgment. Assuming, arguendo, that the purported assessment of September 13, 1982 for $16,243.58 was validly created, the estate's four installment payments, totalling $16,025.47, reduced any possible unpaid balance in the assessment to $218.11. Technically, we could remand this case for further proceedings in the trial court on the issue of the existence of the September 13, 1982 assessment, a fact that we have only assumed for the sake of argument. But so doing would, in light of the nominal amount at issue, incur a substantial and wasteful expenditure of judicial resources, not to mention attorneys fees and unrecoverable costs to the IRS and the taxpayers alike. Instead, we hark to the time-tested maxim of de minimis non curat lex, and render judgment for the IRS and against the taxpayer in the principal sum of $218.11.
 
 
 42
 For the foregoing reasons, the judgment of the district court in favor of the taxpayers is REVERSED, and judgment is RENDERED in favor of the government and against the taxpayers in the principal sum of $218.11, plus statutory interest, but without penalties, each side to bear its own costs.
 
 
 43
 SO ORDERED.
 
 
 
 [1]
 26 U.S.C. § 7403(a) provides:
 (a) Filing. In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such a tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For the purposes of the preceding sentence, any acceleration of payment under section 6166(g) or 6166(h) shall be treated as a neglect to pay tax.
 
 
 [2]
 26 U.S.C. § 6502(a) provides in part:
 (a) Length of period. Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
 (1) within 6 years after the assessment of the tax, or
 (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such 6-year period, then before such release.)
 
 
 [3]
 26 U.S.C. § 6532(b) provides:
 (b) Suits by United States for Recovery of Erroneous Refunds. Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.
 
 
 [4]
 26 U.S.C. § 6501(a) provides:
 (a) General Rule. Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
 
 
 [5]
 26 U.S.C. § 6213(b)(1)
 
 
 [6]
 For reasons unknown to this court, the parties have assumed that the total of the four installment payments made by the estate equals $16,025.41, which is the amount the estate reported as its tax liability on its 1982 Form 1041. As a result, the parties have assumed that there is a difference of $218.17 between the payments and the alleged assessment of $16,243.58. The total of the installment payments is actually $16,025.47, resulting in a difference of $218.11. We have used the correct amounts for purposes of this opinion
 
 
 [7]
 26 U.S.C. § 7405
 
 
 [8]
 No. CA6-89-0039W (N.D.Tex. January 31, 1990)
 
 
 [9]
 69 T.C. 309 (1977)
 
 
 [10]
 26 U.S.C. § 6211 provides in part:
 SEC. 6211 DEFINITION OF A DEFICIENCY
 (a) In General. For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, and excise taxes imposed by chapters 41, 42, 43, 44, and 45, the term "deficiency" means the amount by which the tax imposed by subtitles A or B, or chapter 41, 42, 43, 44, or 45, exceeds the excess of--
 (1) The sum of
 (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
 (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--
 (2) the amount of rebates, as defined in subsection (b)(2), made.
 (b) Rules for Application of Subsection (a). For purposes of this section--
 (2) The term 'rebate' means so much of an abatement, credit, refund, or other repayment as was made on the ground that the tax imposed by Subtitle A or B or chapter 41, 42, 43, 44, or 45 was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made.
 
 
 [11]
 26 U.S.C. § 6901 provides in part:
 SEC. 6901. TRANSFERRED ASSETS
 (a) Method of Collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred.
 (1) Income, estate, and gift taxes.
 (A) Transferees. The liability at law or in equity, of a transferee of property--
 (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),
 (ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), or
 (iii) of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),
 in respect of the tax imposed by subtitle A and B.
 (b) Liability. Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax.
 
 
 [12]
 Groetzinger, 69 T.C. at 315
 
 
 [13]
 Groetzinger, 69 T.C. at 311
 
 
 [14]
 629 F.Supp. 333 (N.D.Ill.1986)
 
 
 [15]
 Id. at 343-44
 
 
 [16]
 Id. at 344 (citing Marshall v. United States, 158 F.Supp. 793 (E.D.Tex.1958)
 
 
 [17]
 Id
 
 
 [18]
 79-2 U.S.T.C. p 9609 (D.Del.1979)
 
 
 [19]
 See supra note 6