USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1173 GRENVILLE CLARK III, Plaintiff, Appellee, v. UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Martin F. Loughlin, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl, Circuit Judge, _____________ and Dominguez,* District Judge. ______________ ____________________ Kent L. Jones, Tax Assistant to the Solicitor General, with whom _____________ Loretta C. Argrett, Assistant Attorney General, and Gary R. Allen, ___________________ ______________ David English Carmack, and Sally J. Schornstheimer, Attorneys, ________________________ _________________________ Department of Justice, Tax Division, were on brief for appellants. Grenville Clark III pro se.  ___________________ ____________________ August 29, 1995 ____________________ _____________________ *Of the District of Puerto Rico, sitting by designation. STAHL, Circuit Judge. In this federal income tax STAHL, Circuit Judge. _____________ case, the government appeals the district court's grant of summary judgment to taxpayer Grenville Clark III in his suit to recover monies collected by the Internal Revenue Service ("IRS") by levy. Although we agree with the district court that summary judgment for the taxpayer was appropriate, we reduce the amount of the judgment because the district court erred in finding that Clark had fully extinguished his 1985 tax liability. I. I. __ Factual Background Factual Background __________________ The material facts are not in dispute. On August 14, 1986, Clark and his then-spouse, Marguerite Clark, filed their 1985 income tax return, which the IRS received on August 18, 1986. The return indicated a total tax liability of $13,648.00, and on September 29, 1986, the IRS assessed the Clarks' 1985 tax liability in that amount.1 Because the  ____________________ 1. Typically, when the IRS receives a tax return, it evaluates the return for accuracy. If, as in this case, it finds the return satisfactory, it enters an assessment for the amount of tax the taxpayer calculated to be owing. See ___ 26 U.S.C. 6201, 6203. If it disagrees with the taxpayer's determination of the tax liability, the IRS may enter a different assessment, but only after it issues a notice of deficiency to the taxpayer and gives him or her ninety days to challenge its calculations in the Tax Court. 26 U.S.C.  6201, 6212, 6213. The IRS has three years from the date a return is filed to make an assessment of liability. 26 U.S.C. 6501. If the IRS discovers that an assessment "is imperfect or incomplete in any material respect," it may correct the problem by making a supplemental assessment if it does so within the three-year time period for making -2- 2 Clarks did not pay the tax in full at the time of filing, the IRS added penalties and interest to the amount due. The IRS then placed a lien upon their real and personal property and demanded that they satisfy the outstanding tax. As of June 13, 1987, Clark had made several payments on his 1985 tax liability. He also had an unpaid tax liability for 1986 in the amount of $13,415.00, plus interest and penalties. On June 13, 1987, Clark sent the IRS a check for $13,415.00, which he indicated should be applied to his 1986 liability by writing in the "memo" portion of the check: "1040 12/31/86 [Clark's social security number]."2  ____________________ assessments. 26 U.S.C. 6204. Once it makes an assessment of a taxpayer's tax liability for a given year, the IRS generally has sixty days to issue a notice and demand for payment to the taxpayer, 26 U.S.C. 6303(a), and ten years to collect the assessed amount, 26 U.S.C. 6502(a)(1). Collection may be made through administrative methods (including federal liens and levies), see 26 U.S.C. 6321, 6331, or judicial methods ___ (suits to foreclose liens or to reduce assessments to judgment), see 26 U.S.C. 7403. If it does not make an ___ assessment within three years of the filing of a return, the IRS may not pursue collection activities after the close of the three-year period. 26 U.S.C. 6501. It can, however, file suit for collection without an assessment if it does so during the three-year period. Id. ___ 2. In a letter to the IRS dated September 22, 1989, Clark wrote: This payment was voluntarily made, and the memo on the check itself clearly indicates that I designated that it be applied to my 1986 Form 1040 tax liability. This memo conforms with the instruction found at line 67 of my 1986 return which asks that I write my social security number and "1986 Form 1040" on it. -3- 3 The IRS, however, applied the $13,415.00 payment to Clark's outstanding tax liability for 1985, which paid off the balance due3 and yielded an overpayment for that year. On July 17, 1987, the IRS issued Clark a refund check for $11,652.28. Clark and the IRS corresponded over the next several years, both about the refund and about the balance due on the 1986 account, which had not been credited with the $13,415.00 payment. In his correspondence, Clark insisted that he had made a $13,415.00 payment towards his 1986 tax liability, but did not explicitly mention that it had been misapplied to his 1985 account and mostly refunded to him. Clark points out, however, that the copies of the cancelled check he repeatedly sent to the IRS showed code numbers imprinted by the IRS that indicated exactly how the payment had been applied. Finally, in November 1990, the IRS realized that it had misapplied the 1986 payment to Clark's 1985 account. Clark continued to insist, however, that as he had designated that the payment be applied to his 1986 account, he should receive credit for it there. In response, the IRS removed  ____________________ 3. According to our calculations, the balance due on June 19, 1987, the date the IRS received the taxpayer's $13,415.00 payment, was $1,808.59. We calculate this number by adding the payments Clark had made prior to the misapplication ($14,140.72) and subtracting that number from the charges reflected in his account ($15,949.31). -4- 4 the $13,415.00 payment from his 1985 account and applied it to his 1986 account,4 leaving his 1985 account with, in the IRS's view, a balance due of $13,415.00, plus penalties and interest. After some additional correspondence about his 1985 taxes, the IRS collected $24,546.34 from Clark by levying upon his bank accounts and seizing and subsequently selling his car. Clark then filed a claim with the IRS for a refund, but the claim was denied. On January 3, 1994, Clark brought suit in the United States District Court for the District of New Hampshire, seeking a refund of the $24,546.34, plus interest. Both parties moved for summary judgment. In his motion, Clark argued that the IRS's collection activities were unlawful because they were not done pursuant to an assessment as required by 26 U.S.C. 6502(a)(1), since the assessment that the IRS had entered in September 1986 had been extinguished. The government responded that assessments cannot be extinguished and that its crediting of Clark's 1986 account resulted in an underpayment in his 1985 account, leaving the IRS its statutory rights to collect the unpaid 1985 tax liability on the basis of the original assessment.  ____________________ 4. Because the taxpayer had already satisfied his 1986 account to avoid further penalties, the transfer resulted in an overpayment on the 1986 account. Pursuant to the taxpayer's direction, the IRS applied the overpayment to his tax liabilities for 1988 and 1989. -5- 5 The district court relied on the Fifth Circuit's decision in United States v. Wilkes, 946 F.2d 1143 (5th Cir. _____________ ______ 1991), to hold that a full payment extinguishes an assessment and that subsequent refunds do not revive extinguished assessments. The district court also found that Clark's 1985 assessment had been extinguished. Although acknowledging that Clark was getting "an undeserved windfall," the district court granted Clark's motion for summary judgment, thus rendering moot the government's cross motion for summary judgment. The government appeals. II. II. ___ Discussion Discussion __________ A. Standard of Review ______________________ As always, we review a district court's grant of summary judgment de novo and, like the district court, review __ ____ the facts in the light most favorable to the nonmoving party. See, e.g., Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995). ___ ____ ___ _____ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). B. Analysis ____________ 1. Can Assessments be Extinguished? -6- 6 The government argues that the district court erred in holding that assessments are extinguished by payment. Under the government's theory, assessments cannot be extinguished, so if there is an underpayment of the amount recorded in the assessment at any time during the ten-year period for collection, then the IRS may institute procedures to collect that amount. The government reasons that because Clark's 1985 account reflected an underpayment of $13,415.00, plus interest and penalties, after the IRS removed the misapplied $13,415.00 payment, and because the ten-year limitations period had not expired, the IRS was entitled to implement administrative procedures to collect the amount due. The government's argument has essentially three prongs. First, the government argues that assessments cannot be extinguished because they are merely administrative records of a taxpayer's tax liability for a given year. According to the government, assessments are not affected by payment, but remain as permanent records of tax liability regardless of whether the taxpayer satisfies that liability or not. As such, assessments are not like promissory notes or mortgages, which create liability and are cancelled when the debt is satisfied. In fact, the government contends that assessments create no liability at all, since tax liability is created by the Internal Revenue Code and may be collected -7- 7 even without an assessment if the IRS brings suit within three years of the filing of a return.  Second, the government argues that the Internal Revenue Code's distinction between rebate refunds and non- rebate refunds5 supports its position that assessments cannot be extinguished. This argument is based on the government's contention that when the IRS erroneously refunds an amount to a taxpayer, it can reclaim that amount in two ways: (1) by bringing an erroneous-refund suit under 26 U.S.C. 7405, or (2) through administrative collection procedures.6 Under the government's view, if assessments can be extinguished, then the IRS would not be able to pursue  ____________________ 5. Rebate refunds are generated when the IRS recalculates a taxpayer's tax liability for a given year, as when, for example, a taxpayer submits an amended return showing additional deductions. According to the government, when the IRS issues a rebate refund, the original assessment is abated to the extent of the refund so that it reflects the taxpayer's actual tax liability for the year in question. Non-rebate refunds, on the other hand, stem not from a recalculation of the taxpayer's tax liability, but rather from a determination that the taxpayer paid more than the assessed amount. According to the government, non-rebate refunds do not affect the original assessment, which remains intact as an accurate record of the taxpayer's tax liability. 6. The government contends that the legislative history of  7405 shows that the section was not intended to be the IRS's exclusive method for collecting erroneous refunds. Rather, as a Senate Report explaining the predecessor of 7405 states, "the erroneous refund may [also] be recovered by assessment in the ordinary manner." S. Rep. No. 960, 70th Cong., 1st Sess. 42 (1928); see also Brookhurst, Inc. v. ___ ____ _________________ United States, 931 F.2d 554, 557 (9th Cir.) (IRS not limited _____________ to 7405 because imperfect assessment may be reassessed within three years from date tax return was filed), cert. _____ denied, 502 U.S. 907 (1991). ______ -8- 8 administrative collection procedures to recover non-rebate refunds. The government explains that if an erroneous refund was a rebate refund, then before the IRS can implement administrative collection procedures, it must first enter a supplemental assessment, since the original assessment was abated to the extent of the refund and does not reflect the taxpayer's true tax liability; the IRS has the authority to enter a supplemental assessment under 26 U.S.C. 2604 because erroneous rebate refunds constitute deficiencies under 26 U.S.C. 6211. The government contends, however, that if the erroneous refund was a non-rebate refund, then the original assessment still reflects the taxpayer's total tax liability and so provides a basis for implementing administrative collection procedures immediately. The government argues that not only is there no need for the IRS to enter a supplemental assessment, but that it actually could not, since non-rebate refunds do not constitute deficiencies under 6211 and since the original assessment still exists and there cannot be two valid assessments for the same tax liability. The government reasons that if assessments could be extinguished, then the IRS would not be able to pursue administrative collection procedures to recover erroneous non-rebate refunds. Because the government thinks that administrative collection procedures should be -9- 9 available for recovering non-rebate refunds, it contends that assessments cannot be extinguished. Third, the government cites three cases that support its view that assessments cannot be extinguished. See Davenport v. United States, 136 B.R. 125, 127 (W.D. Ky. ___ _________ _____________ 1991) (holding that "[a] non-rebate erroneous refund simply gives back to the taxpayer a part of the taxpayer's assessed tax and the assessed balance due may be collected by ordinary collection procedures"); Sanfellipo v. United States, 90-2 __________ _____________ U.S. Tax Cas. (CCH) 50,567, at 85,943 (N.D. Cal. 1990) (taxpayer's payment of assessments "did not extinguish the liabilities or otherwise foreclose the IRS from attempting to collect the erroneous refunds"); Groetzinger v. Commissioner, ___________ ____________ 69 T.C. 309, 315-16 (1977) (viewing all transactions together to determine that erroneous refund resulted in an underpayment of tax). We decline to adopt the government's position that assessments cannot be extinguished. Instead, we follow the Fifth and Seventh Circuits, the only circuits to have addressed this issue thus far, in holding that when a taxpayer tenders payment on a tax assessment, that payment extinguishes the assessment to the extent of the payment. O'Bryant v. United States, 49 F.3d 340, 346 (7th Cir. 1995); ________ _____________ Wilkes, 946 F.2d at 1152; see also Karp v. United States, 868 ______ ___ ____ ____ _____________ F. Supp. 235, 237 (N.D. Ill. 1994); United States v. Brown, ______________ _____ -10- 10 782 F. Supp. 321, 324-25 (N.D. Tex. 1990); Rodriguez v. _________ United States, 629 F. Supp. 333, 344 (N.D. Ill. 1986); United _____________ ______ States v. Young, 79-2 U.S. Tax Cas. (CCH) 9609, at 88,221 ______ _____ (D. Del. 1979); LaFollette v. United States, 176 F. Supp. __________ ______________ 192, 195 (S.D. Cal. 1959). We also agree that an erroneous refund does not revive an extinguished assessment. See ___ O'Bryant, 49 F.3d at 346; Wilkes, 946 F.2d at 1152. As the ________ ______ Seventh Circuit explained in O'Bryant, 49 F.3d at 346, there ________ is a fundamental difference between money taxpayers possess as the result of an erroneous refund and money they originally owed the IRS (their tax liability): taxpayers who receive erroneous refunds owe the IRS "because they have been unjustly enriched by it, not because they have not paid their taxes." Thus, [w]hen a taxpayer mails the IRS a check in the full amount of his assessed tax liability, and the IRS cashes it, the taxpayer's liability is satisfied, and unless a new assessment is made later on, any erroneous, unsolicited refund that the IRS happens to send the taxpayer must be handled on its own terms, not under the rubric of the assessed liability. Id. at 347. ___ As our discussion indicates, we are unpersuaded by the government's assertion that assessments are merely bookkeeping devices that cannot be extinguished by payment. Like the Seventh Circuit, we think this argument misses the point.  -11- 11 Regardless of whether the assessment is a record of the taxpayer's tax liability or is the liability itself, the liability has already been satisfied and cannot be sued on to collect a refund that results not from that liability or any reevaluation thereof but from a simple mistake. Id. at 346. ___ We are also unpersuaded by the government's argument that the difference between rebate and non-rebate refunds shows that assessments cannot be extinguished. In our view, once an assessment has been paid, it is extinguished. If the IRS thereafter issues an erroneous refund, it may recover that refund under 7405 or under administrative collection procedures if those are available.7 As the Seventh Circuit observed in O'Bryant, 49 ________ F.3d at 347,  ____________________ 7. The cases relied on by the government for the proposition that after issuing an erroneous refund, the IRS may collect the money either under 7405 or by implementing administrative collection procedures all involve rebate refunds, and thus do not hold either that assessments cannot be extinguished or that non-rebate refunds may be collected on the basis of the original assessment. See Brookhurst, 931 ___ __________ F.2d at 555; Ideal Realty Co. v. United States, 561 F.2d _________________ _____________ 1123, 1124-25 (4th Cir. 1977) (per curiam); Warner v. ______ Commissioner, 526 F.2d 1, 2 (9th Cir. 1975); Black Prince ____________ ____________ Distillery, Inc. v. United States, 586 F. Supp. 1169, 1170-71 ________________ _____________ (D.N.J. 1984) (erroneous refund given on basis of taxpayer's refund claim that incorrectly reported operating-loss deductions). In United States v. C & R Invs., Inc., 404 F.2d _____________ _________________ 314, 315-16 (10th Cir. 1968), which involved a non-rebate refund, the Tenth Circuit remanded the case to the district court to determine whether deficiency procedures were available.  -12- 12 it is an unjustified leap of logic to say that because nonrebate refunds cannot be recovered by reassessment, they must be collectible by resort to the original assessment. There is no indication in the Code that Congress intended such a result and we refuse to reach it, especially when doing so would require us to mischaracterize an erroneous refund as tax liability. Finally, because their holdings are logically excluded by ours, we disagree with Davenport, Sanfellipo, and _________ __________ Groetzinger. ___________ 2. Was Clark's 1985 Assessment Extinguished? Although not invited to do so by either party, we nonetheless find it necessary to consider whether Clark fully satisfied the assessment for his 1985 tax liability. The district court held that the 1985 assessment was extinguished no later than July 20, 1987, the date on which the IRS misapplied Clark's $13,415.00 payment to his 1985 account.8 That misapplication, however, had two results: (1) it satisfied Clark's $1,808.59 outstanding tax liability, and  ____________________ 8. Given the thrust of the government's brief on appeal, and because the IRS removed the $13,415.00 payment from the taxpayer's 1985 account and moved it to his 1986 account, we assume for the purposes of this case that taxpayers may direct how the IRS must apply their payments. Cf. Rodriguez, ___ _________ 629 F. Supp. at 344 (checks tendered to satisfy outstanding tax liability for three years extinguished liability for all three years, even though the IRS applied too much money to one account and too little to another and therefore issued a refund); Young, 79-2 U.S. Tax Cas. (CCH) at 88,220-88,221 _____ (payment made towards individual tax liability extinguished assessment, even though the IRS credited the payment to the taxpayer's sole proprietorship tax account and refunded it). -13- 13 (2) it generated a large overpayment, which the IRS refunded to Clark. This situation is similar to that considered by the Fifth Circuit in Wilkes, which involved income taxes paid by ______ an estate. Because the estate had miscalculated the amount of tax due, it paid $218.11 less than the actual amount due. The IRS, however, erroneously credited an unrelated taxpayer's payment to the estate's account, which had two results: (1) it satisfied the outstanding $218.11 balance, and (2) it generated in a large overpayment, which the IRS refunded to the estate. Several years later, the IRS realized its mistake and sued the estate to reduce the assessment to judgment, hoping thereby to collect the entire tax liability again on the basis of the original assessment.9 The Fifth Circuit held that the IRS was entitled to recover only $218.11, the only portion of the assessment remaining that had not been extinguished by payment. Wilkes, 946 F.2d at 1152. Accordingly, the Fifth ______ Circuit entered judgment against the estate, but only for $218.11, that portion of the assessment that remained unextinguished. Id. ___  ____________________ 9. There was some question in that case about whether the IRS had ever actually entered an assessment. The Fifth Circuit, however, assumed arguendo that it had. Wilkes, 946 ________ ______ F.2d at 1148. -14- 14 We follow the Fifth Circuit and hold that assessments may only be extinguished by payment tendered by ________ the taxpayer, and not by an IRS error. Prior to the misapplication, Clark had paid all but $1,808.59 of the amount due under his 1985 assessment. Accordingly, prior to the misapplication, Clark had extinguished the assessment, except for the $1,808.59 still outstanding. It has always been Clark's position that he never tendered the $13,415.00 towards the 1985 assessment; rather, that amount was always to be applied to his 1986 liability. Thus, Clark never tendered the $1,808.59 due under the 1985 assessment. Because he never tendered the $1,808.59, Clark still remained liable for it. The IRS was therefore entitled to collect that amount under the original assessment. III. III. ____ Conclusion Conclusion __________ For the foregoing reasons, we affirm the grant of summary judgment to Clark, but reduce the amount of that judgment by $1,808.59, plus interest due, which the IRS was entitled to collect. This case is remanded for action in accordance with this opinion. -15- 15