T.C. Memo. 2008-171


UNITED STATES TAX COURT


LARRY J. AND SHERILYN WADSWORTH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10823-05.               Filed July 21, 2008.


<u>Lillian W. Wyshak</u>, for petitioners.

<u>Valerie L. Makarewicz</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


KROUPA, <u>Judge</u>:  Respondent determined a $147,708 deficiency for 2001 and a $56,958 deficiency for 2002 in petitioners' Federal income tax based on petitioners' amended returns for those years.  Respondent also determined accuracy-related

penalties under section 6662(a)[1] of $29,541.60 for 2001 and $11,125.60 for 2002.

After concessions,[2] the only remaining issue is whether petitioners are liable for the accuracy-related penalties for 2001 and 2002.[3] We hold that petitioners are liable for the accuracy-related penalties.

FINDINGS OF FACT[4]

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioners resided in California at the time they filed the petition.

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]This Court issued an order denying petitioners' amended motion to dismiss for lack of jurisdiction, amended motion to strike, and motion to shift the burden of proof, pursuant to Wadsworth v. Commissioner, T.C. Memo. 2007-46. Petitioners renew their objection to our jurisdiction. We reject their position, for the reasons stated in Wadsworth v. Commissioner, supra.

[3]Petitioners conceded at trial and on brief that the amounts of income tax they originally reported on the returns for 2001 and 2002 were accurate and that the amended returns were inaccurate. Petitioners nevertheless maintain that the deficiencies are still at issue. We find petitioners' position inexplicable and completely at odds with their concession and actions.

[4]Petitioners' briefs failed to comply with Rule 151(e). They failed to include a statement of the nature of the controversy, the tax involved, and the issues to be decided. They also failed to include proposed findings of fact and a concise statement of the points upon which they rely.

Larry Wadsworth (petitioner) was a general partner of Gold Coast Medical Services (GCMS), a partnership with gross receipts exceeding a million dollars, in 2001 and 2002.  GCMS operated a pharmacy that provided medical products and services to eligible beneficiaries of the California Medical Assistance Program during 2001 and 2002.

Petitioners timely filed Federal income tax returns for 2001 and 2002 and attached a Schedule E, Supplemental Income and Loss, to each return.  Petitioners reported $534,424 of total income on the Schedule E for 2001 and $345,546 of total income on the Schedule E for 2002, both amounts consisting solely of non-passive income from GCMS.  GCMS also timely filed Forms 1065, U.S. Return of Partnership Income, for 2001 and 2002.[5]

DHS Audit

The California Department of Health Services (DHS) audited GCMS's books after petitioners' original returns were filed.  DHS issued its audit report on August 19, 2003, for the period from January 1, 2001, through February 28, 2002.  DHS concluded that GCMS had been overpaid for those periods and directed GCMS to remit $2,311,634.39 within 60 days of the issuance of the audit report or be subject to interest and an offset of 100 percent withholding on current billings.

---

[5]The returns filed by GCMS are not at issue except to the extent that petitioner reported his distributive share of the partnership's income and loss.  Sec. 702.

Amended Returns

Keith Borges prepared the original GCMS partnership returns for 2001 and 2002 and the original Federal income tax returns for 2001 and 2002 that petitioners filed. He had prepared returns for petitioners since 1994. Mr. Borges received a bachelor of science degree with an emphasis in accounting in 1979 and has been an accountant ever since. He has been a certified public accountant since 1981 and is a partner in the accounting firm of Anderson Lucas Somerville & Borges. He is a member of the American Institute of Certified Public Accountants and the California Society of Certified Public Accountants.

Petitioner and Robert Rosenstein, the attorney representing GCMS in its appeal of the DHS audit findings, contacted Mr. Borges after the audit and asked if the partnership tax returns could be amended to claim a deduction for the amount reflected in the DHS audit as a contingent liability. Mr. Borges researched whether the deduction was appropriate, decided that it was not, and then declined to amend the returns. He requested that Mr. Rosenstein send him any supporting information or legal authority to justify claiming a deduction for a contingent liability. Mr. Borges never received any additional information.

Petitioners and Mr. Rosenstein next looked to Douglas Huff to amend the returns and claim the deduction. Mr. Huff had a background in finance and had been preparing returns for Mr.

Rosenstein's clients for some time. He amended the GCMS returns after discussions with Mr. Rosenstein but without consulting tax cases or any other information. Mr. Huff had several conversations with Mr. Rosenstein about the amended returns because Mr. Borges' refusal to amend the returns concerned Mr. Huff, yet he went ahead with amending the returns. Mr. Huff described Mr. Rosenstein as a "bankruptcy-tax attorney" who had been preparing returns for many years. Mr. Huff amended petitioners' returns based on what he described as a "possible contingent liability."

GCMS filed amended partnership returns after DHS issued its audit report but before learning the result of GCMS's appeal. The amended partnership returns reported that GCMS reduced its gross receipts for "returns and allowances" by $1,981,401 for 2001 and by $330,555 for 2002 to correspond to the amounts identified in the DHS audit report.

Petitioners filed amended individual returns in March 2004 reflecting the changes in GCMS's partnership income. Petitioners attached an amended GCMS Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., to each amended return and reported a decrease in partnership income and a loss from the partnership activity on each return. The changes reflected the amounts identified in the DHS audit report. Those changes resulted in

petitioners' claiming and receiving a $147,708 refund for 2001 and a $56,958 refund for 2002.

Appeal of DHS Audit Findings

GCMS appealed the DHS audit findings. After GCMS amended its returns to pass through to petitioner the "possible contingent liabilities" arising from that audit, the results of the DHS audit were overturned. The DHS Office of Administrative Hearings and Appeals concluded on September 7, 2004, that GCMS did not engage in discriminatory billing and had not been overpaid. Consequently, GCMS made no reimbursement payments to DHS.

Petitioners' amended returns prompted respondent's examination of petitioners' returns. Respondent examined petitioners' returns for each of the years at issue and determined deficiencies in the amounts allowed as refunds of the overpayments claimed on the amended returns. Petitioners timely filed the petition.

OPINION

Petitioners have paid and conceded the deficiencies resulting from the amended returns. The issue remaining is whether petitioners are liable for the accuracy-related penalties with respect to the deficiencies attributable to claiming the contingent liabilities.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for accuracy-related penalties for substantial understatements of income tax under section 6662(b)(2) for 2001 and 2002.[6] A taxpayer is liable for an accuracy-related penalty of 20 percent for any part of an underpayment attributable to, among other things, a substantial understatement of income tax. See sec. 6662(a) and (b)(2); sec. 1.6662-2(a)(2), Income Tax Regs. There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Petitioners reported $23,986 of tax due for 2001 when $171,694 was required. Petitioners reported $38,265 of tax due for 2002 when $95,233 was required. These understatements exceed the section 6662 threshold

---

[6]Respondent determined in the alternative that petitioners were liable for accuracy-related penalties for negligence or disregard of rules or regulations under sec. 6662(b)(1) for the years at issue. Because respondent has proven that petitioners substantially understated their income tax for the years at issue, we need not consider whether petitioners were negligent or disregarded rules or regulations.

for both years.  We find respondent has satisfied his burden of production.

<u>Disclosure of a Position and Reasonable Basis for Treatment</u>

No accuracy-related penalty may be imposed for a substantial understatement of income tax, however, when the taxpayer adequately discloses the relevant facts affecting the tax treatment of an item and there existed a reasonable basis for the treatment of that item.  Sec. 6662(d)(2)(B); sec. 1.6662-4(e), Income Tax Regs.  A taxpayer may disclose on a Form 8275, Disclosure Statement, a Form 8275-R, Regulation Disclosure Statement, or on the return itself.  Sec. 1.6662-4(f)(1) and (2), Income Tax Regs.  The Commissioner has prescribed other circumstances in which information provided on a return is adequate.  Sec. 1.6662-4(e)(1) and (f)(2), Income Tax Regs.  A Schedule K-1 is not listed as a proper form for disclosure.  Rev. Proc. 2001-52, 2001-2 C.B. 491; Rev. Proc. 2002-66, 2002-2 C.B. 724.

Petitioners argue that attaching the amended Schedule K-1 to the amended returns was sufficient to alert respondent of petitioners' position.  We disagree.  Petitioners failed to attach a Form 8275 or explain the basis of their changes when they amended the returns.

Disclosure will not have an effect, moreover, where the position on the return has no reasonable basis.  Sec. 1.6662-

4(e)(2)(i), Income Tax Regs. The reasonable basis standard is not satisfied by a return position that is merely arguable. Secs. 1.6662-4(e)(2)(i), 1.6662-3(b)(3), Income Tax Regs.

Petitioners essentially argue that they elected the "modified cash" method of accounting, yet fail to explain what that is or how it absolves them from the penalty. The partnership, if on the cash method of accounting, would have been entitled to a deduction for a liability to the State of California for the year in which the liability was paid. See sec. 1.461-1, Income Tax Regs. Petitioners presented no evidence that the partnership paid any portion of the $2,311,634.39 during 2001 or 2002 to the State of California. Nor was the partnership entitled to a deduction for "returns and allowances" in 2001 or 2002 under the accrual method of accounting. An accrual basis taxpayer generally cannot accrue a deduction for a contested liability unless conditions of section 461(f) are met. The partnership contested DHS's report and made no transfer within the meaning of section 461(f) to provide for the satisfaction of the liability. An accrual method taxpayer who fails to satisfy the conditions of section 461(f) ordinarily is not entitled to claim a deduction for a contested liability before the year in which the contest is eliminated by compromise or settlement or through a final disposition. Dixie Pine Prods. Co. v. Commissioner, 320 U.S. 516 (1944). We find that petitioners had

no reasonable basis for their position, and accordingly the adequate disclosure exception does not apply.

Petitioners' Receipt of Refunds Produced Deficiencies

Petitioners also argue that because the amount of income tax they originally reported was correct, they are not liable for penalties. Again, we disagree. The crucial question is whether the refunds of the overpayments claimed on their amended returns were rebate refunds, subject to recovery by the deficiency procedures. If the refunds were made on the ground that the income tax imposed for each year was less than the amount shown as tax on petitioners' return for that year, then the refunds constitute rebates. See sec. 6211(b)(2); see also Clayton v. Commissioner, T.C. Memo. 1997-327, affd. without published opinion 181 F.3d 79 (1st Cir. 1998). If the refunds were unrelated to a recalculation of their tax liabilities, however, then they would be characterized as non-rebate refunds. Clark v. United States, 63 F.3d 83, 86-87 (1st Cir. 1995); O'Bryant v. United States, 49 F.3d 340, 342 (7th Cir. 1995). The refunds here are rebates within the meaning of sections 6211(b)(2) and 6664(a) because they were made on the ground that petitioners' tax liabilities were less than the amounts shown as tax on their original returns. Accordingly, the refunds are subject to the deficiency regime of sections 6211 through 6216 and result in

underpayments, within the meaning of section 6664(a), on which the accuracy-related penalties may be imposed.

<u>Petitioners Did Not Have Reasonable Cause or Act in Good Faith</u>

The accuracy-related penalty is not imposed with respect to any portion of an underpayment if a taxpayer shows that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, that portion of the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. Petitioners have the burden of proving that the accuracy-related penalty does not apply. See <u>Higbee v. Commissioner</u>, 116 T.C. at 446. The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the taxpayer's reliance on the advice of a professional. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional tax adviser constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. <u>Id.</u> To prove reasonable cause due to reliance on the advice of a tax adviser, however, the taxpayer must show that the adviser was a competent professional with sufficient expertise to justify reliance. <u>Neonatology Associates, P.A. v. Commissioner</u>, 115 T.C.

43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); Ellwest Stereo Theatres v. Commissioner, T.C. Memo. 1995-610.

We agree with respondent that petitioners lacked reasonable cause for, and failed to act in good faith with respect to, their substantial understatements of income tax for 2001 and 2002. Petitioners made very little effort to assess their proper tax liability, and they failed to heed the advice of their longtime return preparer, Mr. Borges. Petitioners ignored Mr. Borges' advice, and Mr. Huff amended the returns instead. We find that Mr. Borges' refusal to amend the returns should have raised a red flag for petitioners, but petitioners disregarded that warning.

Petitioners offer no explanation for their reliance upon Mr. Rosenstein and Mr. Huff in spite of their longtime preparer Mr. Borges' refusal to amend their returns. Petitioners also failed to establish that Mr. Huff and Mr. Rosenstein were competent professionals with sufficient expertise to justify their reliance. Mr. Rosenstein never testified. Mr. Huff did. Mr. Huff does not appear to have a background in tax, and he offered no legal authority to explain why he amended the returns other than that Mr. Rosenstein directed him to do so.

Petitioner is a successful businessman who, as a partner of GCMS, operated a multimillion-dollar business. It is reasonable to assume that such a person would investigate the basis for amending his returns when his longtime accountant advised against

the position taken in those returns.  Petitioners' decision to amend their returns appears to have been motivated not by the demands of the law but by their desire for tax refunds.

Conclusion

We find that petitioners' efforts to assess their correct tax liabilities were unreasonable and not in good faith. Petitioners could not in good faith rely upon Mr. Huff's and Mr. Rosenstein's advice when they disregarded their longtime preparer's concerns and then provided no explanation of their decision to follow controversial advice other than that they wanted the refunds.

We have considered all the remaining arguments that the parties made and, to the extent not addressed, we find them to be irrelevant, moot, or without merit.  Accordingly, we sustain respondent's determinations for each of the years at issue regarding the accuracy-related penalty under section 6662.

To reflect the foregoing,

Decision will be entered for respondent.