Leroy P. STANLEY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–32T.

United States Court of Federal Claims.

May 1, 1996.

Robert I. White, Houston, Texas, for plaintiff. Lawrence Sherlock, of counsel.

W.C. Rapp, Washington, DC, with whom were Assistant Attorney General Loretta C. Argrett, Mildred L. Seidman, and Thomas D. Sykes, for defendant. David Gustafson, of counsel.

## OPINION

MARGOLIS, Judge.

This federal income tax case is before the court on the parties' cross-motions for summary judgment. The question is whether the Internal Revenue Service can recover an erroneous refund of $637,004.62 from plaintiff based on the original assessment or a subsequent remittance from plaintiff, or whether defendant has failed to timely act in the manner prescribed by the Internal Revenue Code and is now therefore time-barred from recovering the erroneous refund. After careful consideration of the record, and after hearing oral argument, this court finds that no material issue of fact exists and that plaintiff is entitled to judgment as a matter of law. Accordingly, the court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment.

## FACTS

The Internal Revenue Service ("IRS" or "the Service") issued a notice of deficiency with respect to plaintiff Stanley's 1982 tax return on January 21, 1986, disallowing certain credits and deductions relating to an investment called OEC Leasing. The Service determined that Stanley owed additional tax of $240,541.37, plus additions for negligence and overvaluation.

In response to the notice of deficiency, Stanley filed a petition on April 7, 1986, in the United States Tax Court, contesting the determinations made by the Internal Revenue Service. The parties ultimately settled the case, and on October 11, 1989, counsel for Stanley mailed a check to the Internal Revenue Service for $538,276.17, to be applied against deficiencies in tax, additions to tax, and interest to be assessed against Stanley for 1982. The Service credited Stanley's 1982 income tax account for that amount.

On January 22, 1991, the Tax Court entered a decision in the 1982 case, which became final on April 22, 1991. The Court noted that Stanley had paid the deficiency and addition to tax subsequent to the notice of deficiency. A "Statement of Account" prepared on October 11, 1990 by the Internal

Revenue Service also reflected that payments were made against Stanley's tax liability and his Internal Revenue Code ("I.R.C.") Sec. 6659 liability on October 16, 1989, in the respective amounts of $491,710.97 and $46,565.20.

Pursuant to Internal Revenue Code Section 6503(a), the statute of limitations for assessing additional tax against Stanley for 1982 was suspended during the pendency of the 1982 case and for 60 days after the decision in that case became final. This 60-day period expired on June 21, 1991.

On June 18, 1991, the Internal Revenue Service assessed tax, penalty, and interest for 1982 against Stanley in conformity with the decision of the Tax Court in the respective amounts of $194,592.33, $46,565.20, and $274,720.41, for a total of $515,877.94. This assessment was not entered into the Internal Revenue Service computer data base until more than a month later, between July 21, 1991 and July 27, 1991.

Before the assessment was entered into the Internal Revenue Service computer data base, however, the Service erroneously refunded $637,004.62 to Stanley. The check, dated July 15, 1991, indicated on its face that it was a refund of overpaid 1982 income tax, plus interest. The check was recorded in the Internal Revenue computer data base for Stanley's 1982 income tax account between June 30, 1991 and July 6, 1991.

On September 9, 1991, the Internal Revenue Service sent Stanley a "Reminder of Unpaid Tax." The notice stated that Stanley had not paid a prior assessment of 1982 income tax of $515,877.94 and that additional interest had accrued in the amount of $114,371.74, yielding a total due of $630,249.68. In response, Stanley remitted the $630,249.68, hand-delivered on September 20, 1991, with a letter from his counsel questioning any further liability for 1982 income tax (as Stanley's 1982 tax liability was fully satisfied in 1989), requesting that the Service treat the remittance as a bond to stop the running of penalties and interest, and stating that Stanley expected the Service to return the remittance to him.

In July 1992, Stanley received a check from the Internal Revenue Service in the amount of $28,314.43. The check stated that it was a refund for the year 1982 and included $1,729.79 in interest.

On July 6, 1993, Stanley's counsel filed a claim for refund for the return of the $630,249.68 "bond." On October 15, 1993, the Internal Revenue Service sent Stanley a notice disallowing the claim. Plaintiff filed a complaint in this court on January 21, 1994, demanding the return of the $630,249.68, with interest. Plaintiff subsequently reduced the amount claimed to $603,665.04–$630,249.68 less $26,584.64 (the July 1992 refund of $28,314.43 less the $1,729.79 interest included in that refund). Plaintiff also conceded at oral argument that even if he prevails, he is not entitled to interest.

## DISCUSSION

Section 7405(b) of the Internal Revenue Code (unless otherwise noted, all statutory citations are to the Internal Revenue Code, 26 U.S.C.) expressly provides that "[a]ny portion of a tax imposed by this title, refund of which is erroneously made, ... may be recovered by civil action brought in the name of the United States." Section 6532(b) places a two-year statute of limitations from the date of the erroneous refund on the government's right to sue under § 7405:

"Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact."

In the present case, the two-year period of limitation expired in July 1993, two years from the July 1991 erroneous refund. The government failed to bring a civil action to recover the erroneous refund by July 1993.

I.R.C. Section 6502(a), however, provides that where an assessment is timely made, "such tax may be collected by levy or by a proceeding in court ... within 10 years after the assessment of the tax." The additional 1982 tax was timely assessed on June 18,

1991, and the 10–year limitations period will therefore not run until June 2001.

Under Section 6211(b)(2), a "rebate" is a refund "made on the ground that the tax imposed by [the Code] was less than [amounts shown on the return and previously assessed]." The refund in the present case was therefore not a rebate refund. Since a rebate refund is based on a redetermination of tax liability by the IRS, the refund results from an abatement of the original assessment. At that point, only the reduced assessment remains.

The government claims that if, however, the underpayment results from a return of an amount previously assessed and paid because of an error unrelated to a redetermination of liability (a "non-rebate" refund), the original assessment is unabated, and the IRS may therefore timely recover the erroneous refund based on the original assessment. The government argues in the alternative that the Internal Revenue Service recovered the erroneous refund within the two-year limitations period, as Stanley remitted the refund within three months of receiving it in response to an IRS demand, and then "plaintiff lay in the bushes awaiting expiration of the limitations period for the Government to file suit to collect a debt the Commissioner thought had already been satisfied ..." Defendant's Reply Brief at 9.

Stanley claims, however, that he is entitled to the erroneous refund made to him on July 15, 1991 by the Internal Revenue Service because the only lawful means of recovering the refund was a civil suit brought by the government within the two-year limitations period. Plaintiff contends that his remittance of $538,276.17 to the IRS on October 11, 1989 was a payment of the assessment for additional tax, penalties, and interest for tax year 1982 which extinguished the liability, and that the assessment could not be resurrected by an IRS mistake (the erroneous refund) because that would subject the taxpayer to duplicate payment of the same tax. Plaintiff therefore claims that when, on September 9, 1991, the IRS issued a notice to Stanley representing that Stanley had not paid his 1982 tax liability, the IRS was making an unlawful demand for a double pay-

ment of the 1982 tax. In sum, plaintiff maintains that the IRS's issuance of the erroneous refund does not justify resort to the collection devices granted by Congress for the collection of an unpaid tax. Plaintiff contends that the IRS was instead obligated to use the procedures designated for recovery of erroneous refunds.

*I. The Internal Revenue Service cannot recover the erroneous refund to Stanley based on the June 18, 1991 assessment.*

This court interprets § 7405 to provide that an erroneous refund with respect to a tax previously assessed by the Internal Revenue Service can be recovered by the IRS in only two ways: 1) a civil suit filed within the two year-limitations period of § 6532(b); or 2) reassessment within the limitations period on the making of assessments and collection within the ten-year limitations period of § 6502(a). The erroneous refund cannot, however, be recovered on the basis of the original assessment. This interpretation of § 7405 is supported by the plain language of the Internal Revenue Code, the legislative history of § 7405, and the decisions of three circuit courts of appeal.

The government cites the U.S. Tax Court's decision in *Groetzinger v. Commissioner,* 69 T.C. 309, 1977 WL 3623 (1977), to support its position that erroneous refunds can be recovered based on the original assessment, even if that liability has been paid. In that case, the IRS timely made deficiency assessments against an estate, and the total tax liability of $23,767.91 was paid in full. Subsequently, however, due to an IRS error in posting the payments made by the estate, the IRS refunded $19,667.74 to the estate, which was distributed to the beneficiaries. *Groetzinger,* 69 T.C. at 311.

The IRS did not discover the error until almost four years after the erroneous refund, whereupon it issued deficiency notices to the beneficiaries. The *Groetzinger* court did not reach the issue of whether collection of the erroneous refunds was barred by the two-year statute of limitations because the beneficiaries failed to raise it affirmatively. *Id.* at 312. However, in response to the government's argument that the Tax Court did not have jurisdiction because I.R.C. § 7405 pro-

vides for recovery of erroneous refunds by means of civil actions in the district courts, the *Groetzinger* court found that "both the permissive language of the section and its legislative history indicate that the section was not intended to provide an exclusive remedy for the recovery of erroneous refunds.... It was intended to broaden, not limit, respondent's remedies for the recovery of erroneous refunds." *Id.* at 312–13.

In support of this conclusion, the *Groetzinger* court cited the 1939 legislative history of the precursor to Section 7405, which included the following statement: " 'Obviously, if the limitation period on the making of assessments has not expired, the erroneous refund may be recovered by assessment in the ordinary manner.' [S.Rept. 960 70th Cong. 1st Sess. 42, 1939–1 C.B. (Part 2) 409, 438.]" *Id.* at 313 (emphasis omitted). The court concluded that "[c]learly, section 7405 does not preclude the attempted assessments in this case." *Id.*

Under I.R.C. § 6501, however, the IRS must assess tax within 3 years after the return is filed. As more than three years had passed since the estate in *Groetzinger* had filed its return, a reassessment was not available to the IRS. This line of reasoning by the court is therefore problematic. Similarly, in the present case, the time period within which assessments must be made expired on June 21, 1991.

Once the *Groetzinger* court had established that it had jurisdiction, the court turned to arguments on the merits. The IRS contended that the erroneous refund resulted in a deficiency. While the court did not agree with this contention (because the refund was not a "rebate" refund, i.e., one made on the ground that the tax due for the period was less than the tax shown on the return plus amounts previously assessed or collected without assessment), it nevertheless found that there was an underpayment of tax. *Id.* at 315. "Arguably, the estate taxes were fully paid after respondent negotiated the second check [from the estate]. But when all of the financial transactions are viewed together, there is clearly an underpayment of tax." *Id.* Thus, the court found

that the beneficiaries were liable for the underpayment. *Id.* at 317.

This reasoning in *Groetzinger,* however, does not support defendant's argument. The issue in the case before this court is not whether there is an underpayment. The parties do not dispute that the IRS may recover erroneous refunds. The issue is whether Section 7405 provides the exclusive means of recovery, or whether recovery may also be had based on the original assessment. The *Groetzinger* court did not directly address this issue.

The government also cites *Davenport v. United States,* 91–2 U.S.Tax Cas. ¶ 50,531 (W.D.Ky.1991). *Davenport* involved a double credit followed by an erroneous payment by the IRS to the taxpayers. The district court stated that "[a] non-rebate erroneous refund simply gives back to the taxpayer a part of the taxpayer's assessed tax and the assessed balance due may be collected by ordinary collection procedures." 91–2 U.S.Tax Cas. at 90,025.

In arguing that the government cannot recover the erroneous refund based on the 1991 assessment, however, plaintiff relies on the Fifth Circuit's decision in *United States v. Wilkes,* 946 F.2d 1143 (5th Cir.1991), the decision of the Seventh Circuit in *O'Bryant v. United States,* 49 F.3d 340 (7th Cir.1995), and the decision of the First Circuit in *Clark v. United States,* 63 F.3d 83 (1st Cir.1995).

In *Wilkes,* the IRS erroneously credited another taxpayer's payment to an estate's account and subsequently sent an erroneous refund to the estate. *Wilkes,* 946 F.2d at 1145. The estate had timely paid all but $218.11 of the tax assessed by the IRS. *Id.* at 1146–47 n. 6. Approximately three and one-half years later, the IRS informed the estate that the refund was erroneous and requested payment of this amount. *Id.* at 1145. After approximately 17 more months, the IRS filed suit in the district court seeking to reduce to judgment the purported unpaid balance of taxes on an assessment it made one day less than 6 years earlier. (Section 6502(a)(1) of the Internal Revenue Code then in effect provided that tax may be collected within 6 years of an assessment.) *Id.* The IRS claimed that neither the payments made

by the estate nor the erroneous refund extinguished the assessment. The estate claimed that the true nature of the suit was not to reduce an assessment to judgment, but to recover an erroneous refund, and that such an action was barred by the two-year statute of limitations on suits for recovery of erroneous refunds. *Id.* at 1146.

The district court had found that the true nature of the IRS's suit was to recover an erroneous refund, and that the IRS therefore had only two courses of action. It could seek recovery under Section 7405 of the Code, in which case, pursuant to Section 6532(b) of the Code, the IRS must bring such an action within two years after making the refund. Second, the IRS could make a new assessment and proceed under the Code's deficiency provisions, in which case, pursuant to Section 6501(a) of the Code, the new assessment must be made within three years after the filing of the return. As the IRS failed to do either, the district court dismissed the action against the estate. *Id.* at 1147–48.

The court of appeals, however, found that the district court erred in treating the suit as an erroneous refund case. Based on the fact that the IRS was not seeking the full amount of the erroneous refund, but only the amount needed to cover the original assessment, the court determined that the suit was one for judgment on an assessment and not one for recovery of an erroneous refund. *Id.* at 1148. The court found, however, that:

> The weight of authority holds that once a taxpayer makes payment on a tax assessment, the payment extinguishes the assessment to the extent of payment, and subsequent payments [by the IRS to the taxpayer] do not revive the assessment.

*Id.* at 1150. Therefore, a suit to reduce the assessment to judgment would allow the IRS to recover only the $218.11 not yet paid by the estate. *Id.* at 1152. The court concluded that the only avenues open to the IRS to recover the entire erroneous refund were a suit to recover the refund or a new assessment for the amount refunded. Since the IRS failed to take either action within the required time limits, the court found that the IRS could not recover the erroneous refund. *Id.*

In *O'Bryant,* the IRS made an assessment of an additional amount due for the 1984 tax year in November 1985. *O'Bryant,* 49 F.3d at 341. The O'Bryants paid all amounts due in 1987. In January 1988, the O'Bryants received a refund from the IRS, as the IRS had credited their payment to their account twice. In October 1988, the IRS requested payment of the erroneous refund. The O'Bryants failed to return the money, and the IRS did not attempt to collect it by making a new assessment or through a § 7405 suit. Instead, it sought to recover the refund through the summary collection procedures authorized by 26 U.S.C. § 6502(a)(1)—procedures that are available only if the IRS has made an assessment of liability. *Id.*

The district court "adopted the majority view, holding that such refunds can be collected only through an erroneous refund suit under § 7405 or by making a new assessment." *Id.* The district court found, therefore, that the 1987 payment by the O'Bryants of their entire 1984 tax liability extinguished the 1985 assessment. The district court concluded that although its decision handed the O'Bryants a windfall, it made sense in light of the overall scheme of the Tax Code. Certain provisions permit the IRS to recover erroneous refunds, and the court refused to open another avenue that would not sit well with the existing structure. *Id.* at 344.

The court of appeals affirmed the decision of the district court. The court disagreed with *Davenport* and *Groetzinger,* as "that approach would overlook the fundamental difference in character between the money that the O'Bryants now possess (a refund caused by the IRS's error) and the money they originally owed the IRS (their tax liability)." *Id.* at 346. The court found that the O'Bryants owe money "to the government because they have been unjustly enriched by it, not because they have not paid their taxes." *Id.* The court concluded that:

> Because it is a refund, the money the O'Bryants received is not part of the tax-paying transaction as the IRS asserts and therefore cannot be recovered through the § 6502 post-assessment collection procedures. . . . Rather, the agency is confined

to the erroneous refund collection procedures available to it under the Tax Code—§ 7405 and the deficiency/assessment procedures. Because the agency did not (and now cannot) use those procedures, we must hold in the O'Bryants' favor.

*Id.* The court further stated that "although it may seem unjust that the IRS cannot recover its erroneous refund in this case," the decision must be based on the fact that "Congress gave the IRS specifically delineated collection authority, and the IRS must act within that authority." *Id.*

In response to the argument of the IRS that the legislative history of § 7405 indicates that the refund may also "be recovered by assessment in the ordinary manner," the court found that:

> First, nonrebate refunds are not necessarily governed by the intentions Congress had in 1928, some sixteen years before the concept of a nonrebate refund was incorporated into the Code. Second, it is an unjustified leap of logic to say that because nonrebate refunds cannot be recovered by reassessment, they must be collectible by resort to the original assessment. There is no indication in the Code that Congress intended such a result and we refuse to reach it, especially when doing so would require us to mischaracterize an erroneous refund as a tax liability.

*Id.* at 347.

In *Clark v. United States,* 63 F.3d 83, the First Circuit followed *Wilkes* and *O'Bryant,* holding that the payment of a tax liability extinguishes the assessment to the extent of the payment and subsequent refunds do not revive the extinguished assessment.

Clark and his then-spouse did not pay their 1985 tax liability, assessed in September 1986, in full at the time of filing, but as of June 13, 1987, Clark had made several payments on this liability. *Id.* at 84–85. Clark also owed $13,415 for tax year 1986, and on June 13, 1987, Clark sent the IRS a check for this amount, indicating that it should be applied to the 1986 liability. *Id.* at 85. The IRS, however, applied the payment to Clark's 1985 liability, which paid off the balance due and yielded an overpayment for

that year. On July 17, 1987, the IRS issued Clark a refund check for $11,652.28. *Id.*

Finally, in November 1990, the IRS realized it had misapplied the 1987 payment. Clark insisted that the payment be applied to his 1986 account. In response, the IRS removed the $13,415 payment from Clark's 1985 account and applied it to his 1986 account, leaving Clark's 1985 account with, in the IRS's view, a balance due of $13,415, plus penalties and interest (the balance that remained on Clark's 1985 tax liability as of June 13, 1987, plus the erroneous refund). The IRS subsequently collected $24,546.34 from Clark by levying upon his bank accounts and seizing and selling his car. *Id.*

Clark argued that the IRS's collection activities were unlawful because they were not done pursuant to an assessment as required by 26 U.S.C. § 6502(a)(1)—Clark claimed that the September 1986 assessment had been extinguished. *Id.* The district court agreed, relying on *Wilkes* to hold that Clark's 1985 assessment was extinguished since a full payment extinguishes an assessment, and that subsequent refunds do not revive the extinguished assessments. *Id.* at 86.

The First Circuit, quoting extensively from *O'Bryant,* followed the Fifth and Seventh Circuits in holding that when a taxpayer tenders payment on a tax assessment, that payment extinguishes the assessment to the extent of the payment (Clark's assessment was therefore not completely extinguished), and that an erroneous refund does not revive the extinguished assessment. *Id.* at 87–89.

The government claims that the *Wilkes, O'Bryant,* and *Clark* decisions rest upon a fundamental miscomprehension of what an "assessment" represents and the consequences of a "rebate" or a "non-rebate" refund on an assessment. According to the government, an assessment is merely a formal administrative record of a tax obligation; it does not represent a taxpayer's unpaid tax liability, but all his tax liability—paid and unpaid—for that tax period. The government further maintains that payment of the amount assessed does not extinguish the assessment, it merely reduces the balance of the unpaid tax liability as recorded on the

IRS's books; the ultimate obligations of the taxpayer must be viewed in light of all transactions as a whole; and the IRS may recover any shortfall as long as the ten-year period set out in § 6502 has not expired and as long as the refund is not a result of an abatement of the original assessment.

This court declines to adopt the government's interpretation of the Code provisions at issue in this case. As pointed out by the Seventh Circuit in *O'Bryant*, "there is a fundamental difference in character" between the position of a taxpayer who has received an erroneous refund after the payment of her tax liability and the position of a taxpayer who has not paid her tax liability in the first instance. *O'Bryant*, 49 F.3d at 346. Congress made special provision for the collection by the Internal Revenue Service of erroneous refunds in § 7405 of the Tax Code and provided a two-year statute of limitations on such collections in § 6532(b). The legislative history indicates that the Service can also reassess the tax based on the erroneous refund if the limitations period for the assessment of the tax has not expired. If the Service does not act in a timely manner according to these provisions to recover the erroneous refund, it cannot collect the erroneous refund under § 6502—a provision intended to apply to the recovery of a tax liability which has never been satisfied.

The Internal Revenue Service failed to bring a civil action to recover the erroneous refund by July 1993, two years after the July 1991 issuance of the refund. Further, the statute of limitations for assessing additional tax against Stanley based on the erroneous refund for tax year 1982 expired on June 21, 1991. As the Internal Revenue Service did not timely act in the manner prescribed in the Internal Revenue Code for the recovery of the erroneous refund, it is now time-barred from such recovery.

In reaching this conclusion, it is not necessary to take the view that payment of a tax liability extinguishes the assessment. The original assessment is simply not available as a basis upon which to recover the erroneous refund. The Internal Revenue Service must either file a civil suit under § 7405 or reas-

sess the tax on the basis of the erroneous refund.

Although the erroneous refund cannot be collected based on the original assessment, the erroneous refund to Stanley was nevertheless a refund with respect to "a tax imposed by this title," thereby implicating § 7405. The parties do not dispute that the erroneous refund was a mistaken refund of additional 1982 tax. Only if the Internal Revenue Service makes an erroneous refund which is not with respect to a tax imposed upon the taxpayer receiving the erroneous refund would § 7405 not apply.

Although this conclusion results in a windfall for Stanley, the result is compelled by the provisions of the Internal Revenue Code. As the Federal Circuit has noted:

> Taxation, perhaps more so than all other relationships between government and the governed, operates within a belief on both sides that the rules should be clear and uniformly applied, that each party should abide by the rules, and that each should accept the consequences of its choice of action under those rules.

*Cohen v. United States,* 995 F.2d 205, 209 (Fed.Cir.1993).

■ Moreover, if a *taxpayer* fails to timely bring an action to recover an overpayment, the result is a windfall for the Internal Revenue Service. Under I.R.C. § 6511, if a taxpayer fails to bring an action to recover an overpayment within three years from the time the return was filed or two years from the time the tax was paid, whichever is later, the Internal Revenue Service is not required to return the overpayment to the taxpayer.

*II. Stanley's remittance to the Internal Revenue Service of the erroneous refund in September 1991 in response to the Service's "Reminder of Unpaid Tax" did not constitute an Internal Revenue Service recovery of the erroneous refund within the two-year statute of limitations.*

The government argues in the alternative that plaintiff's remittance on September 20, 1991, in response to the IRS's "Reminder of Unpaid Tax" was a "payment," so that the Internal Revenue Service recovered the erro-

neous refund within the two-year statute of limitations. "When plaintiff became unjustly enriched by the refund ... there again arose a debt owed to the United States. We collected that debt in September, 1991." Defendant's Reply Brief at 6.

The government points out that the factual situation here is similar to that in *O'Bryant*, in that the government promptly demanded repayment. But the government claims that since in the present case the Internal Revenue Service received a check from the taxpayer within three months of making the erroneous refund, that the Service did not sit on its rights. The government argues that action to recover the tax was taken and completed well within the limitations period applicable to erroneous refunds of tax. The government contrasts this situation with the situation in *O'Bryant*, where the government arguably did sit on its rights.

The government further asserts that an erroneous refund suit would have been a meaningless act, since, after receipt of plaintiff's September 1991 remittance, there remained no debt owed by plaintiff to defendant.

█ The holding in *Wilkes*, *O'Bryant*, and *Clark*, however, was not that the IRS can obtain taxpayer funds within the two-year limitations period by any means whatsoever. Instead, those courts concluded that the IRS must act within the two-year period in one of the prescribed ways for recovering an erroneous refund. The IRS demand of a second remittance of Stanley's 1982 tax under threat of levy and penalties within the two-year limitations period cannot serve as the basis for a result different from that in *Wilkes*, *O'Bryant*, and *Clark*. The very point of those three cases is that the IRS cannot use levy or other post-assessment procedures to collect an erroneous refund on the basis of the original assessment.

█ Further, Stanley's September 1991 remittance was not a "payment," according to the factors set out by the Federal Circuit's decision in *Cohen v. United States*, 995 F.2d 205 (Fed.Cir.1993).

In *Cohen*, the IRS issued a statutory notice of deficiency to the Cohens for tax years 1980 and 1981. *Cohen*, 995 F.2d at 206. The Cohens contested the proposed deficiency in the Tax Court, but remitted $46,000 to the IRS in response to the notice of deficiency. The IRS subsequently failed to assess additional tax against the Cohens within the statutory time limits, and the Cohens filed a claim for refund of the $46,000. *Id.* at 206–207.

The Federal Circuit found that the remittance was a deposit. The court quoted the Supreme Court in *Rosenman v. United States*, 323 U.S. 658, 662, 65 S.Ct. 536, 538, 89 L.Ed. 535 (1945), where the Court explained that the taxpayer's remittance was a deposit because " 'the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define.' " *Cohen*, 995 F.2d at 208. The Federal Circuit found that "[t]he fact that the Cohens at all times disputed additional tax liability for 1980, coupled with the failure of the IRS to make a timely assessment of deficiency" resulted in a finding that their remittance was a deposit. *Id.* at 209.

Under *Cohen*, the primary consideration in determining whether a remittance is a payment or a deposit is whether the taxpayer indicated an intent to contest the liability. In this case, Stanley's September 20, 1991 remittance to the IRS was accompanied by a letter requesting that the IRS treat the remittance as a bond to stop the running of penalties and interest, stating that Stanley expected the IRS to return the remittance to him, and questioning any further liability for 1982 income tax (as Stanley had paid the tax in 1989). According to *Cohen*, therefore, Stanley's September 20, 1991 remittance was a deposit, not a payment.

Even though Stanley's remittance was made within the two-year limitations period, the IRS may not be permitted to retain the money because it did not act in the manner prescribed by the Internal Revenue Code within the limitations period.

## CONCLUSION

As the Internal Revenue Service failed to timely act in the manner prescribed by the

Internal Revenue Code for recovering an erroneous refund of tax, it is now time-barred from recovering the erroneous refund. The court accordingly grants plaintiff's motion for summary judgment and denies defendant's cross-motion for summary judgment. The clerk shall enter judgment for the plaintiff for $603,665.04. Each party shall bear its own costs.