Leroy P. STANLEY, Plaintiff/Cross–
Appellant,

v.

The UNITED STATES,
Defendant/Appellant.

Nos. 97–5002, 97–5009.

United States Court of Appeals,
Federal Circuit.

April 2, 1998.

Lawrence Sherlock, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX, argued, for Plaintiff/Cross–Appellant. With him on the brief was Robert I. White.

Bridget M. Rowan, Attorney, Tax Division, U.S. Department of Justice, Washington, DC, argued, for Defendant–Appellant. With her on the brief were Loretta C. Argrett, Assistant Attorney General, and David English Carmack.

Before RICH, PLAGER, and BRYSON, Circuit Judges.

PLAGER, Circuit Judge.

In substance this case is one for the recovery by the Internal Revenue Service ("IRS" or "Government") of a large refund paid in error to a taxpayer. In form, however, the taxpayer is seeking money from the Government, having remitted to the IRS an amount similar to the refund, demanded by the IRS in connection with a different, once-disputed but subsequently satisfied income tax liability. The Government claims the right to retain the sum the taxpayer paid in, as an offset against the otherwise now unrecoverable erroneous refund.

The United States Court of Federal Claims granted judgment in favor of the taxpayer, *Stanley v. United States,* 35 Fed. Cl. 493 (1996). The Government appeals. While we recognize that the taxpayer in this

case will receive a windfall, we nonetheless affirm because the IRS failed to act in a manner prescribed by law.

## BACKGROUND

The facts are not in dispute. Mr. Leroy P. Stanley ("Stanley") timely filed an individual income tax return for the calendar year 1982. On January 21, 1986, the IRS issued a notice of deficiency disallowing certain credits and deductions relating to an investment called OEC leasing. The notice indicated that Stanley owed an additional tax of $240,541.37, plus penalties and interest.

In response to the notice of deficiency, Stanley filed a petition in the United States Tax Court contesting the tax liability determination. After a series of exchanges between Stanley's counsel and the IRS, the two parties entered into a settlement agreement. While the agreement did not specify the exact dollar amount owing, it did specify the allowability of certain contested deductions and credits. As part of the settlement, Stanley also admitted liability for a negligence penalty and interest.

Following the settlement, on October 11, 1989, Stanley's attorney mailed a check for $538,276.17 to the IRS along with a letter instructing the IRS on how to apply the remittance. The letter instructed the IRS to apply $190,648.33 to "Tax Due for 1982," $46,833.03 to "Overvaluation Penalty (Section 6659)," and the remainder to "Interest." The IRS received Stanley's check and credited his 1982 income tax account for that amount.

Subsequently, on January 22, 1991, the Tax Court entered a decision in Stanley's still-pending tax case. In an accompanying Order and Decision, the Tax Court entered judgment against Stanley in the amount of $194,592.33 for deficiency in income tax due and another $46,565.20 in overvaluation penalties pursuant to Internal Revenue Code (I.R.C.[1]) section 6659. These two amounts were taken from a "Statement of Account" (IRS Form 3623) prepared by the IRS. That

same form reflected receipt of payments on October 16, 1989 of $491,710.97 under the column "INCOME" and $45,565.20 under the column "I.R.C. 6659," for a total of $538,276.17. Although the specific item amounts differed somewhat from those stated in the letter submitted by Stanley on October 11, 1989, the total, $538,276.17 was the same. Because the amount of income tax the IRS acknowledged having received ($491,710.97) exceeded the liability decreed by the Tax Court ($194,592.33), the form showed a balance due to Stanley of $297,118.54. The Tax Court's Order and Decision reflected this stating that "an overpayment [is] due to petitioner for the taxable year 1982 in the amount of $297,118.54" and noted that the assessments had been paid. Also on the IRS form, however, was a type-written note stating that "[t]he overpayment will be applied to accrued interest." There was no separate column for interest. There is no indication in the record that Stanley ever received a copy of this form.

Pursuant to I.R.C. § 6503(a), the statute of limitations for assessing additional tax against Stanley for the 1982 tax year was suspended during the pendency of the 1982 tax case and for 60 days thereafter. That 60 day period expired on June 21, 1991. Three days prior to the running of the statute, on June 18, 1991, the IRS assessed against Stanley additional tax, penalty, and interest for 1982 in the amounts of $194,592.33, $46,565.20, and $274,720.41, respectively, for a total of $515,877.94. These assessments were entered into the IRS computer database for Stanley's 1982 income tax account during the week of July 21–27, 1991.

Meanwhile, the IRS cut Stanley a check in the amount of $637,004.62, and sent it to him. The check indicated on its face that it was a refund of overpaid 1982 income tax, plus interest thereon. The erroneous refund was recorded in Stanley's account on the IRS database during the week of June 30 to July 6, 1991, several weeks prior to the date the new 1982 assessment was entered on its books.

---

1. Unless otherwise indicated, all references to I.R.C. refer to the present form of the cited section of Title 26.

Then on September 9, 1991, the IRS sent Stanley a "Reminder of Unpaid Tax" requesting payment from Stanley in the amount of $630,249.68. The reminder letter broke out the requested amount into "Balance of Prior Assessments" of $515,877.94 and "Interest" of $114,371.74. This was clearly a reference to the new assessment made on June 18, 1991, for the 1982 taxable year. The letter also warned Stanley—"If your payment is not received within 10 days from the date of this notice, additional penalties and interest may be charged."

In response to the reminder letter, on September 20, 1991, Stanley's attorney sent a check to the IRS for the requested amount of $630,249.68. An accompanying letter questioned the propriety of the tax liability in light of the Tax Court decision, which indicated that an overpayment was due Stanley. Accordingly, counsel put two questions before the IRS:

> First, how did the Internal Revenue Service compute the various elements of this Reminder and conform them to the final Tax Court Decision entered in this case? Second, how can an assessment be made of any amount when the Tax Court Decision (Exhibit B) orders the refund of $297,118.64 over-payment?

Because of the apparent confusion, Stanley's counsel requested that the IRS "treat this amount as a bond to stop the running of penalties and interest." Accordingly, Stanley wrote on the check itself "for Tax Bond." The letter closed by stating that, in due course, "we expect you to zero out the balance set out in the Reminder (Exhibit A) and return the enclosed funds to Stanley." The IRS received and subsequently negotiated the check. It appears that rather than treat Stanley's remittance as a "bond," as he had requested, the IRS applied the money to the balances which it carried regarding his 1982 tax account.

In July 1992, Stanley received yet another refund from the IRS. This time in the amount of $28,314.43, which included $1,729.79 in interest. After Stanley received this second check, he requested from the IRS proof that the June 18, 1991 assessment had in fact been made. Stanley specifically requested a copy of an "assessment roll." In a previous meeting, the IRS had provided Stanley with a copy of IRS Form 3552 showing that the assessments totaling $515,877.94 had been made on June 18, 1991. Stanley and the IRS exchanged several letters between Stanley's initial request on July 30, 1992 and the IRS's final response dated December 23, 1992. In response to Stanley's repeated queries, the IRS produced a print-out entitled "Summary Record of Assessments" that showed an income tax deficiency assessment of $7,966,702.93 on June 18, 1991 representing 16 separate assessments. While Stanley's last letter indicated that this information was inadequate because it did not break the assessment down by taxpayer, there is no evidence of record that any further information was provided by the IRS in response.

In July 1993, Stanley wrote to the IRS requesting "the return of a deposit made on September 29, 1991 in the amount of $630,249.68 against a purported 1982 income tax liability." Enclosed along with the letter was IRS Form 843, "Claim for Refund and Request for Abatement," and Form 1040X, "Amended U.S. Individual Income Tax Return." Both forms were submitted because Stanley was apparently unsure which was required in this situation. In a letter dated October 15, 1993, the IRS disallowed Stanley's claim.

The IRS gave the following explanation:

> Your claim was referred to the examination division for review and their response was to disallow your claim. The statute for assessment expired on June 21, 1991 and the assessment made by exam was assessed on June 18, 1991, before the statute had expired. Your letter requesting payment of $528,276.17 [sic] to be treated as a cash bond was not found in your case file.

Stanley filed a complaint in the United States Court of Federal Claims on January 21, 1994, demanding the return of $630,249.68 with interest. Stanley subsequently reduced the amount claimed by $26,584.64, to $603,665.04, in order to reflect receipt of the second refund ($28,314.43) less the interest

included therein ($1,729.79). Before the court, both parties moved for summary judgment. The trial court granted Stanley's and denied the Government's. *See Stanley,* 35 Fed.Cl. at 493. The Government appeals that decision. Following entry of judgment, Stanley moved to amend the judgment to include post-judgment interest. The court denied Stanley's motion. *See Stanley v. United States,* 36 Fed.Cl. 196 (1996). Stanley cross-appeals the denial of post-judgment interest.

## DISCUSSION

■ We have exclusive appellate jurisdiction over final judgments of the United States Court of Federal Claims. *See* 28 U.S.C. § 1295(a)(3) (1994). We review the propriety of summary judgment, including any attendant legal questions, without deference to the trial court's decision. *See Cohen v. United States,* 995 F.2d 205, 207 (Fed.Cir. 1993).

### I.

The Government properly describes this case as one of "computer-generated blunders that rendered [Stanley] the fortuitous beneficiary of a substantial windfall." Nor does Stanley claim that he is entitled as a matter of substantive tax law to the $600,000, or deny that, if the trial court is affirmed, he will walk away with that windfall.

Rather, despite the convoluted factual history, and the arcane rules regarding reassessments, demands, collections, and so on, that only a tax lawyer could love, the case boils down to a simple proposition: Has the Government proceeded to recover what rightfully belongs to it in a manner authorized by law?

The Government has at least two statutory options available to it to recover an erroneous refund. The first is to file a civil suit. *See* I.R.C. § 7405. Such suit, however, must be brought within two years of the erroneous refund. *See* I.R.C. § 6532.[2] It is undisputed

that the Government did not file a civil suit to reclaim the erroneous refund within the limitations period; it is therefore barred from doing so now.

The second option is to reassess a taxpayer's liability as it relates to the relevant tax year, taking into account the erroneous refund. *See* I.R.C. § 2604; *Brookhurst, Inc. v. United States,* 931 F.2d 554, 556 (9th Cir. 1991). The Government then has ten years from the reassessment to recover the reassessed tax liability by levy or other court proceeding. *See* I.R.C. § 6502(a)(1). The reassessment, however, must be done within three years of the filing of that year's tax return. *See* I.R.C. § 6501(a). The periods of limitation provided in I.R.C. § 6501 and § 6502, as mentioned above, may be suspended during the pendency of a case in the Tax Court and for 60 days thereafter. *See* I.R.C. § 6503(a).

As explained above, in the case before us the IRS on June 18, 1991, made a timely reassessment regarding the 1982 tax year. That reassessment, however, obviously did not account for the erroneous refund since the refund was not made until some time later—the check was dated July 15, 1991. The limitations period for making new assessments expired on June 21, 1991 pursuant to I.R.C. § 6503(a). The Government is therefore now barred under I.R.C. § 6501 from reassessing Stanley's 1982 tax liability to take account of the erroneous refund.

Even though the June 1991 reassessment did not address the erroneous refund problem, the Government argued before the Court of Federal Claims that the erroneous refund could nevertheless be recovered on the basis of that assessment. *See Stanley,* 35 Fed.Cl. at 496. The trial court, in a well reasoned opinion, rejected this argument in light of the "plain language of the [I.R.C.], the legislative history of § 7405, and the decisions of three circuit courts of appeal," citing *United States v. Wilkes,* 946 F.2d 1143 (5th Cir.1991), *O'Bryant v. United States,* 49 F.3d 340 (7th Cir.1995), and *Clark v. United*

---

**2.** The statute does allow for suits within five years of the refund "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." I.R.C. § 6532(b). The

government has not alleged any such fraud or misrepresentation in this case. Accordingly, we limit our discussion to the two-year statute of limitations.

*States,* 63 F.3d 83 (1st Cir.1995). *Stanley,* 35 Fed.Cl. at 496. Since the trial judge's decision, the Eleventh Circuit has weighed in and joined with the other three. *See Bilzerian v. United States,* 86 F.3d 1067, 1069 (11th Cir. 1996). In the face of this overwhelming authority, the Government on appeal wisely does not pursue this argument.

■ The argument the Government does pursue is an amalgam of several propositions. First the Government argues that a debt was created on receipt of the erroneous refund by Stanley, citing *United States v. Wurts,* 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938). The IRS can recover such a debt by demanding the return of the erroneous refund pursuant to I.R.C. § 6404(e)(2) and, if the demand is unavailing, bring suit to recover the amount under I.R.C. §§ 6532(b) and 7405. The Government argues from this that resort to civil suit was unnecessary in this case because Stanley "virtually satisfied" his outstanding debt by his September 1991 remittance in response to the IRS's demand.

The argument has a certain attractiveness to it, but unfortunately does not hold up on these facts. Certainly the IRS has long used consensual dispute resolution in lieu of litigation. Such alternatives should be encouraged, and if a taxpayer chooses to return money that properly belongs to the Government and not to the taxpayer, as a proper taxpayer should, the Government is entitled to retain the money. One of the problems with the Government's position on appeal, however, is that it never demanded return of the erroneous refund.

The only "demand" that was made by the Government was for the payment of an unpaid tax which the Government thought was still due from the 1982 tax year. The "Reminder of Unpaid Tax," which the government alleges was its demand note, stated that "[t]he federal tax shown below [$630,-249.68] has not been paid. It is overdue. Please pay it today." No mention was made of an erroneous refund, nor was the return of one ever mentioned as such.

Nor can we conclude based on the record before us that Stanley should have understood that the Government's "Reminder" was in effect a demand putting him on notice of the Government's intention to seek a refund. The amount requested in the "Reminder" was not the same amount as the erroneous refund. Had the amount been precise, even if the wording was less so, the Government might be able to argue that the demand was intended to address the erroneous refund. Nothing in the "Reminder" supports such a reading.

Nor can we even infer from the record that Stanley necessarily knew that the refund was erroneous at the time it was made. While most ordinary taxpayers who received a refund check for some $600,000 would know that something was amiss, Stanley was no ordinary taxpayer. Stanley was involved in a complex set of financial transactions stemming from his business, resulting in a number of tax disputes, several of which were the subject of tax court cases. As the history of this case demonstrates, substantial sums of money flowed between Stanley and the Government.

In light of these facts, we cannot readily conclude that Stanley knew that he was not entitled to the refund. Even if he did, the Government cannot simply point to correspondence between the parties that dealt with aspects of their tax problems and designate that as a proper demand. The taxpayer must reasonably be put on notice that the Government seeks return of the erroneous refund in order for it to qualify as a "demand," that is, as part of an assessment that allows the Government the extended time in which to pursue its money.

Furthermore, if the Government wishes to treat the payment as a return of wrongfully held monies that absolves the Government of its obligation to bring suit, the taxpayer must have voluntarily made the payment for that purpose. (Voluntarily does not mean happily, or even willingly, but at least knowingly.) The Government cannot just latch onto some money in its possession in order to satisfy the outstanding "debt" produced by an erroneous refund. *Cf. O'Bryant,* 49 F.3d at 346; *Clark,* 63 F.3d at 88. The money must be remitted by the taxpayer for the purpose of satisfying the debt. Otherwise, the Government would be allowed to offset the debt by

money remitted by the taxpayer for any other purpose. For example, would the Government be free to treat a taxpayer's routine payment of income taxes ten years later as a repayment of a belatedly discovered erroneous refund, and then assess the taxpayer for failing to pay the income taxes? That would be inherently inconsistent with Congress' specific provision that allows the Government two years in which to sue for an erroneously paid refund. *See* I.R.C. §§ 7405, 6532.

In the case here, Stanley remitted the requested amount of $630,249.68 as a "bond" in order to "stop the running of penalties and interest," which the IRS threatened if "payment [was] not received within 10 days." That same letter indicated in no uncertain terms that Stanley expected in due course for the IRS to "zero out the balance set out in the Reminder ... and return the enclosed funds to Stanley." The record leaves no doubt that both the IRS and Stanley had in mind the June 18, 1991, reassessment of taxes for the 1982 taxable year. Under such circumstances, the IRS was not free to use the money for an entirely different purpose. The money was submitted for a single purpose and it must be used as such or returned.

The Government admits as much in its brief when it repeatedly says that the "debt" was "virtually satisfied," rather than actually satisfied, because of the similarity between the amount demanded and the erroneous refund. *See Brief for the Appellant* at 8, 10, 16, 20. The law cannot be read that broadly. *See O'Bryant,* 49 F.3d at 346 ("Congress gave the IRS specifically delineated collection authority, and the IRS must act within that authority.")

The Government cites *Goldstein, Baron & Lewis, Chartered v. United States,* 995 F.2d 35 (4th Cir.1993) in support of its position. In *Goldstein,* as in this case, the IRS made an erroneous refund to the taxpayer. Upon receipt of the refund, the taxpayer "acknowledged in writing that it was not entitled to the refund." *Id.* at 37. A week later the IRS wrote back demanding return of the

refund, which the taxpayer did, albeit "under protest." *Id.* at 36. Thus, the taxpayer had actual notice of the erroneous nature of the refund, the IRS made an actual "demand" for its return, and the taxpayer remitted the erroneous refund. Under these circumstances, the IRS need not resort to an erroneous refund suit, as so held in *Goldstein.*

In the case before us, the taxpayer at the time of the September 20, 1991, "bond" payment neither acknowledged his debt to the Government, nor indicated that the payment was for the purpose of repaying the $600,000 refund. *See also Luther v. United States,* 1996 WL 149283, at *8 (D.Mont. Jan. 16, 1996) (permitting the IRS to retain remitted erroneous refund when "plaintiffs clearly knew, at the time they repaid the government, that they were repaying the government money plaintiffs did not have a right to keep"). The fact that Stanley now admits, after the benefit of full discovery, that the refund was erroneous, does not change the fact that at the time of his remittance of the "bond" he contested the Government's right to the money and expected its return.[3] Accordingly, our decision is fully consistent with *Goldstein.*

The Government makes much of the fact that the so-called "bond" check did not conform with IRS regulations regarding remittance of a bond or deposit. The Government notes that there is no provision in the tax laws for what Stanley did. According to the Government, remittance of a bond or deposit is only permitted under the terms set forth in Rev. Proc. 84–58, 1984–2 C.B. 501. Since these procedures were not followed in this case, Stanley's remittance was not a "bond" or "deposit" despite his labeling it as such. Accordingly, argues the Government, it was free to treat it as a payment and use it as an offset against the erroneous refund.

That misses the point. The point is not whether Stanley properly invoked the deposit procedures for the payment he made, but

---

**3.** It is for this same reason that *United States v. McRee,* 7 F.3d 976 (11th Cir.1993) (in banc) is inapposite. Here we are not faced with a case of the taxpayer "knowingly and willfully" converting an erroneous refund. *See id.* at 983 ("[W]e find that the government presented sufficient evidence to prove that [defendants] acted knowingly and willfully with the intent to either temporarily or permanently deprive the government of its property.").

whether the payment he made was for the purpose of repaying the Government what was rightly the Government's. In the absence of his making such a payment voluntarily, the Government is left to the devices the law authorizes for recovery of an erroneously made refund—reassess the taxable year involved taking into account the erroneous payment, or sue pursuant to the statute for recovery of an erroneously made refund.

## II.

 Stanley goes too far, however, in his request for interest. Post-judgment interest on a claim against the United States is available only if, and to the extent that, there exists a provision in the substantive law granting interest with respect to the underlying claim. *See* 28 U.S.C. § 2516 (1994). Section 1961 of Title 28 is not such a substantive law in this case. While that statute does provide for interest generally on "any money judgment in a civil case recovered in a district court," that section does not apply "in any judgment of any court with respect to any internal revenue tax case." 28 U.S.C. § 1961 (1994). In tax cases, "[i]nterest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1986." 28 U.S.C. § 1961(c)(1).

Without saying as much, Stanley in effect argues that he overpaid his taxes and is therefore entitled to interest at the "overpayment rate." In order to reach this conclusion, however, we would necessarily have to conclude that Stanley's remittance was a payment. Stanley cannot have it both ways. To paraphrase the Supreme Court, "[i]t will not do to treat the same transaction as payment and not as payment, whichever favors the [taxpayer]." *Rosenman v. United States*, 323 U.S. 658, 663, 65 S.Ct. 536, 538, 89 L.Ed. 535 (1945). Because we held above that Stanley's remittance was not for the purpose of making a "payment," that is, for repaying the erroneous refund, this forecloses his claim for interest. While Stanley no doubt takes issue with how we have framed his cross-appeal, we assume Stanley does not object to our choice of alternatives.

Our decision awards Stanley a windfall of some $600,000. Though this may seem offensive to many other taxpayers who mostly give but do not receive, that is not a sufficient reason to deny Stanley's claim. *See O'Bryant*, 49 F.3d at 346 ("[A]lthough it may seem unjust that the IRS cannot recover its erroneous refund in this case (after all, our holding does give the O'Bryants a windfall), we cannot base our resolution of the issue before us on the equities of a particular factual situation.") Our strict adherence to the law cuts both ways—sometimes the law favors the taxpayer, as here, other times it favors the Government. *See, e.g., Commissioner of Internal Revenue v. Lundy*, 516 U.S. 235, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996). This case is yet another good example though of the rule that "[i]t is rare that tax law bears any recognizable relationship to common sense." *Cohen*, 995 F.2d at 209. Be that as it may, the IRS cannot entirely absolve itself from responsibility for the outcome. It was the IRS's failure to timely record the tax assessment that resulted in its giving the erroneous tax refund; it was the IRS that failed to timely bring suit or reassess the relevant tax year once the error was discovered.

## CONCLUSION

Because the IRS acted without proper authority when it applied Stanley's "bond" to offset the erroneous refund, the judgment of the United States Court of Federal Claims is

*AFFIRMED.*

## COSTS

Each party to bear its own costs.