T.C. Memo. 2003-279

UNITED STATES TAX COURT

CURTIS J.L. MCINTOSH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10131-01L.                    Filed September 25, 2003.

Curtis J.L. McIntosh, pro se.

<u>Stephen J. Neubeck</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Pursuant to section 6330(d), petitioner seeks review of respondent's determination to proceed with collection of his 1990 income tax.[1]

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

FINDINGS OF FACT

The parties have stipulated most of the facts, which we incorporate herein by this reference.  When petitioner filed his petition, he resided in Hamilton, Ohio.

A.   1990 Notice of Deficiency

Petitioner filed no tax return for the 1990 tax year.  On November 25, 1992, respondent mailed to petitioner a notice of deficiency in regard to his 1990 income tax.  Respondent mailed the notice to 2325 Anderson Road, Apartment 240, Crescent Springs, Kentucky (the Kentucky address).  This was the address listed on petitioner's 1988 Federal income tax return, his then most recently filed return.

On December 10, 1992, the notice of deficiency was returned to respondent marked "Not Deliverable".  Respondent inquired of a credit bureau and obtained an address for a Curtis McIntosh at 2036 Parkamo Avenue, Hamilton, Ohio (the Ohio address).  On January 19, 1993, respondent verified the Ohio address with the postmaster.  On February 19, 1993, respondent sent petitioner a letter requesting that he verify the Ohio address.  Respondent received no response to this request and did not resend the notice of deficiency.

B.   Notice and Demand for Payment

On April 26, 1993, respondent mailed to petitioner, at the Kentucky address, a notice of balance due and demand for payment

with regard to his 1986, 1990, and 1991 tax liabilities.  This notice was returned marked "No Longer At This Address/Addressee Unknown".

On September 22, 1993, respondent sent petitioner a Final Notice (Notice of Intent to Levy) by certified mail to the Ohio address.  On September 27, 1993, petitioner signed for the notice.  In October of 1993, petitioner's address in respondent's master file was changed to the Ohio address after a collection officer verified that the address was valid.

C.  First Levy and Sale

On July 24, 1995, respondent levied upon petitioner's home and vehicle (the property).  On October 6, 1995, respondent sold the property by sealed bid to Alum Cliff Industries (ACI). Petitioner was never personally served with notice of the sale. Respondent applied $10,583.24 of the sale proceeds to petitioner's unpaid 1990 tax liability.

D.  Reversal of Sale and of Credit to Petitioner's Tax Account

In 1995, petitioner brought suit in the U.S. District Court for the Southern District of Ohio against various defendants, including the Internal Revenue Service (IRS) and ACI.  See McIntosh v. United States, 82 AFTR 2d 98-6501 (S.D. Ohio 1998). In this suit petitioner sought, among other things, to quiet title to the property.  Admitting procedural irregularities in failing to provide petitioner with notice of the sale of the

property, the IRS repurchased the property from ACI and in early 1998 returned title to petitioner.  Respondent also reversed the $10,583.24 credit to petitioner's 1990 tax account that had been generated by the prior seizure and sale of the property.

E.  Renewed Collection Activity

On March 23, 1998, respondent notified petitioner of a $13,133.52 balance due on his 1990 tax assessment and demanded payment.  On April 13, 1998, respondent sent petitioner notice that the property would be levied upon again if he did not pay his outstanding 1990 tax liability.

F.  Petitioner's Unsuccessful Effort To Enjoin Collection Activity

Petitioner's aforementioned suit in the District Court was still pending when the IRS returned the property to him and notified him that it intended to levy upon the property again. Petitioner moved the District Court for a temporary restraining order and a preliminary injunction to prevent the IRS from proceeding in this collection activity.  As a basis for this motion, petitioner alleged that the IRS had failed to mail a notice of deficiency for 1990 to his last known address and to mail a statutory notice of assessment and demand for payment to his last known address within 60 days of assessment, pursuant to section 6303(a).  The District Court denied petitioner's motion. See id.  In its opinion, issued September 17, 1998, the District Court found, among other things, that respondent mailed a timely

notice of deficiency for 1990 to petitioner's last known address. Id. at 98-6510.[2]

G. Final Notice

On April 7, 1999, respondent sent petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to petitioner's unpaid 1986 and 1990 tax liabilities.

H. Appeals Office Hearing

On May 7, 1999, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, with respect to his 1986 and 1990 taxes. In the Form 12153, petitioner indicated that he disagreed with the notice of intent to levy with respect to his 1986 tax liability because, among other reasons, no notice of deficiency had been issued. With respect to his 1990 tax liability, petitioner indicated that he disagreed with the notice of intent to levy for the following reasons: "No notice of assessment and demand for payment sent to last known address within 60 days of assessment, IRS received payment, lien is invalid, IRS lacks authority to conduct administrative seizure."

---

[2] Although it would appear to have been unnecessary for its disposition of petitioner's motion, the U.S. District Court for the Southern District of Ohio also found that no notice of deficiency was issued to petitioner for 1986 or 1991. McIntosh v. United States, 82 AFTR 2d 98-6501, at 98-6503 (S.D. Ohio 1998).

On March 9, 2000, petitioner attended an Appeals Office hearing in Cincinnati, Ohio, conducted by Appeals Officer William C. Roll.  On July 21, 2000, the Appeals Office mailed to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).  The notice of determination states in pertinent part:

> The assessments for 1986 are invalid, and no collection action will be enforced.
>
> For 1990, the assessments are valid.  In your appeal, you did not raise any alternative collection method to enforce collection, and the proposed levy should be enforced.

An attachment to the notice of determination states in pertinent part:

> A valid notice of deficiency [for 1990] was issued, and assessments were made in accordance with legal and procedural requirements.  The deficiency notice was mailed to your last known address, at the time the notice was mailed.  Your failure to file current returns prevented an update of your address, so that you failed to receive notices of demand for payment.  Your failure to receive the notices mailed to your last known address does not invalidate the assessments.  The legal and procedural requirements for 1990 have been met.
>
>       *    *    *    *    *    *    *
>
> It is determined that a deficiency notice for 1990 was mailed timely to your last known address.  Your failure to file any tax return after 1989, and failure to cooperate in acknowledging your new address, contributed to the lack of your current address being in the files of the Internal Revenue Service.  Because notices were issued to your last known address as of

the date they were issued, the assessments for 1990 are valid.

## I. Petitioner Seeks Review in Wrong Court

On August 18, 2000, petitioner filed a complaint in the District Court seeking review of respondent's determination to proceed with collection of his 1990 taxes. On July 11, 2001, the District Court dismissed the complaint with prejudice for lack of subject matter jurisdiction.

## J. Tax Court Petition

On August 14, 2001, petitioner timely petitioned this Court to review respondent's determination to proceed with collection of his 1990 taxes. In his petition, petitioner claims that: (1) No one representing the IRS attended the Appeals Office hearing;[3] (2) the Appeals officer "did not obtain verification at the hearing from the Secretary indicating that the requirements of any applicable law or administrative procedure had been met as required by 26 U.S.C. §6330(c)(1), nor was petitioner shown any such evidence"; (3) respondent did not issue a notice of assessment and demand for payment as required by section 6303; and (4) respondent has already received payment for petitioner's 1990 tax liabilities.

---

[3] Petitioner did not raise this issue at trial or on brief; therefore, we deem petitioner to have abandoned it. See Burbage v. Commissioner, 82 T.C. 546, 547 n.2 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Wolf v. Commissioner, T.C. Memo. 1992-432, affd. 13 F.3d 189 (6th Cir. 1993).

OPINION

A. Applicable Law

If any person neglects or refuses to make payment of any assessed Federal tax liability within 10 days of notice and demand, the Secretary is authorized to collect the assessed tax by levy on the person's property. Sec. 6331(a). At least 30 days before taking such action, however, the Secretary generally must provide the person with a written final notice of intent to levy that describes, among other things, the administrative appeals available to the person. Sec. 6331(d)(1), (4). The written final notice must be given in person, left at the person's dwelling or usual place of business, or sent by certified or registered mail to the person's last known address. Sec. 6331(d)(2).

Upon request, the person is entitled to an administrative hearing before the Appeals Office of the IRS. Sec. 6330(b)(1). If dissatisfied with the Appeals Office determination, the person may seek judicial review in the Tax Court or a Federal District Court, as appropriate. Sec. 6330(d). Generally, the proposed levy actions are suspended for the pendency of the hearing and any judicial appeals therein. Sec. 6330(e)(1).

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing, including spousal defenses, the appropriateness of the Commissioner's intended collection

action, and possible alternative means of collection.  A taxpayer may contest the existence or amount of the underlying tax liability at an Appeals Office hearing only if the taxpayer did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180-181 (2000).  Moreover, except in certain limited circumstances, a person is generally precluded from raising at the Appeals Office hearing any issue raised and considered in any previous administrative or judicial proceeding.  Sec. 6330(c)(4).

Where the validity of the underlying tax liability is properly at issue, we review that issue de novo.  See Sego v. Commissioner, supra at 610.  Other issues we review for abuse of discretion.  Id.  On brief, petitioner acknowledges that he "has not challenged the validity of the tax liability" and that we should review respondent's determination in this collection proceeding for abuse of discretion.

B.  Verification Requirement

Petitioner contends that the Appeals officer failed to obtain verification from the Secretary that the requirements of all applicable laws and administrative procedures had been met as required by section 6330(c)(1).

Section 6330(c)(1) does not require the Commissioner to rely

on a particular document to satisfy the verification requirement contained therein. See, e.g., <u>Hauck v. Commissioner</u>, T.C. Memo. 2002-184, affd. 64 Fed. Appx. 492 (6th Cir. 2003). It is well established that the Commissioner may rely on transcripts of account to satisfy the section 6330(c)(1) verification requirement. See <u>id.</u> (and cases cited therein). Section 6330(c)(1) does not require the Appeals officer to provide the taxpayer with a copy of the verification at the hearing. Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.; see <u>Nestor v. Commissioner</u>, 118 T.C. 162, 166 (2002).

The administrative file developed by respondent's Appeals Office in connection with petitioner's request for a collection hearing contains, among other things, transcripts of petitioner's account for taxable year 1990. Among these transcripts are a so-called IMFOLT file dated March 9, 2000, and a literal transcript dated March 6, 2000. These transcripts indicate, among other things, that petitioner filed no 1990 Federal income tax return, and that on April 26, 1993, respondent made a substitute for return and assessed petitioner's 1990 income tax liability (and related penalties and interest). The transcripts reflect no payments on petitioner's account other than the $10,583.24 credited to petitioner's account on October 6, 1995 (the date that respondent sold the property to ACI). The literal transcript shows that this credit was reversed in 1998

(retroactive to April 26, 1993) as a payment "processed in error" (consistent with respondent's return of the property to petitioner in 1998). Petitioner alleges no irregularity in these transcripts that would raise a question about the information contained therein. Moreover, the record contains a copy of the notice of deficiency issued to petitioner with respect to his 1990 taxes and shows that as part of his verification process the Appeals officer appropriately considered the District Court's finding in McIntosh v. United States, 82 AFTR 2d 98-6501, at 98-6510, that the notice of deficiency for 1990 was timely issued to petitioner at his last known address.

The record also contains three copies of Form 4340, Certificate of Assessments and Payments, of petitioner's 1990 account dated April 16, 1996, May 29, 1998, and October 4, 2002. Petitioner received these Forms 4340 at various times before and after his Appeals Office hearing. Such certificates of assessments and payments "are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." Gentry v. United States, 962 F.2d 555, 557 (6th Cir. 1992); see Schroeder v. Commissioner, T.C. Memo. 2002-190; Kaeckell v. Commissioner, T.C. Memo. 2002-114. Petitioner contends that various circumstances show that the Forms 4340 lack

trustworthiness.  We are unpersuaded by petitioner's arguments in this regard.[4]

We conclude that the various transcripts and other materials in the administrative file, as well as the District Court's opinion in McIntosh v. United States, 82 AFTR 2d 89-6501 (S.D. Ohio 1998), and the various Forms 4340 in evidence establish that respondent properly assessed petitioner's 1990 tax liability. Petitioner has not shown any irregularity in respondent's assessment procedures that raises a question about the validity of the 1990 assessment.

In contesting the Appeals Office determination that the legal and procedural requirements for 1990 have been met, the only specific issues that petitioner has raised in this proceeding relate to his contentions that notice and demand was not sent to his last known address and that his 1990 tax liability has previously been extinguished.  As discussed in

---

[4] For example, petitioner contends that, contrary to information contained in the Forms 4340, notice and demand was not timely sent to his last known address--a contention that we address and reject in Sec. C of this opinion.  As another example, petitioner notes that his most recently received Form 4340, dated Oct. 4, 2002, fails to list the final notice of intent to levy that he received in late September 1993.  There is nothing to suggest, however, that the issuance of a final notice of intent to levy is an event that the Commissioner always records in a Form 4340.  Cf. Keene v. Commissioner, T.C. Memo. 2002-277 (omission of issuance of notice of deficiency from a Form 4340 did not render the Form 4340 suspect).  In any event, the final notice of intent to levy is part of the administrative file that the Appeals officer relied upon in making his determination.

detail below, these contentions are without merit.

C.  Notice and Demand--Last Known Address Requirement

Petitioner contends that he received no notice and demand for payment of his 1990 taxes at his last known address within 60 days of assessment as required by section 6303(a).[5] Consequently, petitioner contends, respondent had no "authority to collect an assessed tax through administrative proceedings."

As a general rule, the Commissioner is entitled to treat the address on a taxpayer's most recent return as the taxpayer's last known address, unless the taxpayer has given "clear and concise notification of a different address."  Abeles v. Commissioner, 91 T.C. 1019, 1035 (1988).  If the Commissioner learns that a taxpayer is not residing at the address shown on the taxpayer's most recent return, the Commissioner must exercise reasonable care and diligence in ascertaining the taxpayer's new address. See Keeton v. Commissioner, 74 T.C. 377, 382 (1980).

---

[5] Sec. 6303(a) provides:

SEC. 6303(a). General Rule.--

Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof.  Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

On his 1988 tax return, petitioner provided respondent the Kentucky address. Petitioner failed to file a 1989 or 1990 tax return or otherwise to inform respondent of a new address. After the 1990 notice of deficiency was returned to respondent in December 1992 marked "Not Deliverable", respondent learned in mid-January 1993 through U.S. Postal Service and credit bureau information that a Curtis McIntosh lived at the Ohio address. Petitioner failed to respond to respondent's request, mailed to the Ohio address, asking him to verify that this was his new address.

In McIntosh v. United States, supra at 98-6510, the District Court decided, on the basis of essentially these facts, that respondent had exercised due diligence in attempting to ascertain petitioner's last known address for purposes of mailing the 1990 notice of deficiency. The District Court first concluded that under relevant caselaw the IRS's duty of diligence extended only to the time that the 1990 notice of deficiency was mailed. Applying that standard, the District Court held that "the only reasonable conclusion" was that the IRS satisfied its duty, inasmuch as petitioner had failed to notify the IRS that he had moved from the Kentucky address. Id. Alternatively, the District Court held that the same result would obtain even if the IRS's duty of diligence extended beyond the mailing of the notice of deficiency. Noting that petitioner had failed to respond to

the IRS's address verification request sent to him at the Ohio address, the District Court concluded: "There is no probative evidence that the IRS had actual notice" of petitioner's Ohio address, even though respondent had received an Ohio address through a credit bureau and a postal tracer. Id. The District Court stated:

> Accepting as true plaintiff's allegation that he did not receive the request for verification, it was reasonable for the IRS to forego changing plaintiff's address on the master file until after other verification had been obtained. Under these circumstances, it must be held that the IRS exercised reasonable care and diligence in ascertaining plaintiff's correct address subsequent to the mailing of the Notice of Deficiency. The IRS cannot be held to have shirked its duty by failing to mail the notice a second time to an address which plaintiff did not provide to the IRS and which he did not verify after being extended the opportunity to do so. Accordingly, the Court finds that the only reasonable conclusion is that the IRS complied with 26 U.S.C. section 6212 prior to making its assessment for that year. [Id.; fn. ref. omitted.]

On April 26, 1993, respondent mailed notice and demand to petitioner at the Kentucky address. It is undisputed that this notice and demand was timely if mailed to petitioner's last known address. The Appeals Office relied upon and adopted the District Court's reasoning to determine that the notice and demand was sent to petitioner's last known address. On brief, petitioner contends that the Appeals officer's action in this regard was an abuse of discretion because "The facts that existed at the time of mailing the Notice of Deficiency did not exist at the time of

mailing the Notice and Demand."  As just described, however, the basis of the District Court's decision was not limited to the facts that existed at the time of the mailing of the notice of deficiency.  Rather, as an alternative basis for its holding, the District Court also considered facts arising after the mailing of the notice of deficiency (i.e., the return of the notice of deficiency as undeliverable, the IRS's attempts at address verification through credit bureau contacts and postal tracers, and petitioner's failure to respond to the IRS's address verification request).  Taking into account these additional facts, the District Court decided that the "only reasonable conclusion" is that the IRS satisfied its duty of diligence with respect to the notice of deficiency.  McIntosh v. United States, supra at 98-6510.

In its opinion, the District Court stated:

> There is an issue as to whether the IRS complied with the statutory requirements for issuing a Notice and Demand for 1990 based on the government testimony presented at the hearing that the IRS sent notices of demand for payment for 1990 to the * * * [Kentucky address] after the Notice of Deficiency sent to that same address had been returned as undeliverable.  * * * [Id. at 98-6511.]

Ultimately, however, the District Court did not decide this issue, concluding that it lacked subject-matter jurisdiction over the relief sought with respect to this matter.[6]  Id.

---

[6] Petitioner contends that materials in the administrative
(continued...)

As far as the record shows, the circumstances as of the date respondent sent the notice and demand to the Kentucky address were essentially unchanged from the circumstances considered by the District Court in holding that the "the only reasonable conclusion" was that respondent had sent the 1990 notice of deficiency to petitioner's last known address in Kentucky and had not breached any duty of diligence by failing to resend it to the Ohio address.  Id. at 98-6510.  In particular, the record does not suggest that before mailing the notice and demand to the Kentucky address respondent had received any additional information from petitioner or from any other source that would support a conclusion that respondent erred in failing to mail the notice and demand to the Ohio address which petitioner had not provided to respondent and which petitioner did not verify after being extended the opportunity to do so.  Accordingly, on the instant record, we conclude, consistent with the District

---

⁶(...continued)
file show that the Appeals officer assumed, incorrectly, that the District Court had found that the notice and demand, as well as the 1990 notice of deficiency, was mailed to petitioner's last known address.  No such mistake is manifest in the notice of determination itself or the attachment thereto, which refers simply to petitioner's failure to cooperate in acknowledging his new address as contributing to the lack of his current address in the IRS files.  But regardless of whether the notice of determination was predicated in part on this alleged misreading of the District Court's opinion, we conclude, as explained in the text above, that timely notice and demand was sent to petitioner's last known address.

Court's reasoning, that respondent mailed the April 26, 1993, notice and demand to petitioner's last known address.

In light of our holding in this regard, we need not and do not decide the effect, if any, of respondent's alleged failure to provide petitioner notice and demand within 60 days pursuant to section 6303(a).[7]

---

[7] Sec. 301.6303-1(a), Proced. & Admin. Regs., provides that notice under sec. 6303(a) shall be given "as soon as possible and within 60 days. However, the failure to give notice within 60 days does not invalidate the notice." In several cases, without expressly addressing the effect of the IRS's failure to give notice within 60 days of the subject assessment, this Court has treated notice that was provided more than 60 days after the subject assessment as satisfying, in whole or part, the notice requirement of sec. 6303(a). See Perez v. Commissioner, T.C. Memo. 2002-274; Hack v. Commissioner, T.C. Memo. 2002-244; Hack v. Commissioner, T.C. Memo. 2002-243; Mudd v. Commissioner, T.C. Memo. 2002-204. These decisions are consistent with decisions of various other courts holding that notice provided more than 60 days after the subject assessment date satisfies the sec. 6303(a) notice requirement. See Ramos v. United States, 84 AFTR 2d 99-6402, 99-2 USTC par. 50,878 (N.D. Cal. 1999); Schupp v. United States, 71 AFTR 2d 93-917, 93-1 USTC par. 50,215 (E.D. Tex. 1993), affd. without published opinion 58 F.3d 636 (5th Cir. 1995); Erickson v. United States, 780 F. Supp. 733 (W.D. Wash. 1990), affd. without published opinion 952 F.2d 1399 (9th Cir. 1992). On the other hand, various other courts have held that the IRS's failure to give notice within 60 days of the subject assessment date bars the IRS from exercising its nonjudicial collection powers but does not preclude the IRS from reducing the subject assessment to judgment in a civil action. See Blackston v. United States, 778 F. Supp. 244 (D. Md. 1991); Behren v. United States, 764 F. Supp. 180, 183 (S.D. Fla. 1991) (stating that sec. 301.6303-1(a), Proced. & Admin. Regs., "insofar as it directly controverts statutory and case authority, is without any precedential value"), affd. on this issue without published opinion 992 F.2d 328 (11th Cir. 1993), on remand 74 AFTR 2d 94-6370 (S.D. Fla. 1994); Dewberry v. United States, 158 Bankr. 979, 982 (Bankr. W.D. Mich. 1993); cf. Jersey Shore State Bank v. United States, 479 U.S. 442 (1987) (the Government is not

(continued...)

D.  Whether Payment Has Been Made

Finally, petitioner alleges that the 1990 tax assessment was extinguished when respondent seized and sold the property in 1995, notwithstanding that respondent subsequently returned the property to petitioner.  Petitioner also argues that section 6343(b) prohibited respondent from repurchasing the property from ACI and consequently prohibited respondent from reversing the credit of the purchase price previously applied to petitioner's 1990 tax liability.  As explained below, we reject both arguments.

1.  Extinguishment of Petitioner's Assessment

Petitioner relies on several cases, including Clark v. United States, 63 F.3d 83 (1st Cir. 1995), for the proposition that his 1990 tax assessment was extinguished by the Government's initial seizure of the property in 1995, even though the property was subsequently returned to him.  The District Court in McIntosh v. United States, 82 AFTR 2d 98-6501, at 98-6510, has previously considered and rejected petitioner's argument in this regard. The District Court concluded:

> Plaintiff's position that the IRS cannot now levy on his real property based on the same Notice of Deficiency which preceded the initial seizure of that property is not well-taken.  Plaintiff relies on Clark v. U.S., 63 F.3d 83 (1st Cir. 1985), for this

---

⁷(...continued)
required to provide a lender with notice under sec. 6303(a) before bringing a civil suit to collect a payroll borrower's unpaid withholding tax under sec. 3505).

proposition.  Clark held that an assessment may be extinguished only by payment tendered by the taxpayer and cannot be extinguished by an IRS error.  Plaintiff has not tendered payment, but seeks to preclude the IRS from proceeding on the assessment for 1990 based on an alleged IRS error.  The authority cited by plaintiff does not support his contention that in this situation, the IRS is precluded from proceeding. [Id. at 98-6510 to 98-6511.]

Petitioner is collaterally estopped from relitigating this issue in this Court.  See Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990).  In addition, section 6330(c)(4) bars petitioner from raising this issue in this collection proceeding.[8]

2.  Section 6343(b)

Pursuant to section 6343(b), if the Secretary determines that property was wrongfully levied upon, the Secretary is authorized to return the property "at any time" or, if the property has been sold, to return the amount of money received

---

[8] With exceptions not relevant here, sec. 6330(c)(4) bars a person from raising in a collection proceeding any issue that was raised and considered at any other administrative or judicial proceeding in which the person meaningfully participated.  See Katz v. Commissioner, 115 T.C. 329, 339 (2000).  "Section 6330(c)(4) in effect codifies the legal doctrines of res judicata and collateral estoppel in their application to collection proceedings."  Wooten v. Commissioner, T.C. Memo. 2003-113.

from the sale at any time within 9 months of the levy.[9]

Petitioner contends that under section 6343(b) respondent's repurchase of the property from ACI, occurring more than 9 months after the initial sale to ACI, was "illegal" and that consequently it was "illegal" for respondent to adjust his 1990 tax account by reversing the credit previously applied to his account upon the sale of the property to ACI.  We disagree.

Section 6343(b) was enacted as part of the Federal Tax Lien Act of 1966, Pub. L. 89-719, sec. 104(i), 80 Stat. 1138.  The relevant legislative history states that section 6343(b) "[authorizes] the Secretary of the Treasury or his delegate to return to <u>its rightful owner</u> any property which has been wrongfully levied upon by the United States."  H. Rept. 1884, 89th Cong., 2d Sess. (1966), 1966-2 C.B. 815, 860 (emphasis

---

[9] Sec. 6343(b) provides:

SEC. 6343(b). Return of Property.--If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return--

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time.  An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy.

supplied).  Respondent's repurchase of the property from ACI did not constitute a return of the property (or its monetary equivalent) to its rightful owner (presumably, petitioner).  Accordingly, section 6343(b) has no application to the repurchase of the property from ACI.  But even if we were to assume, for sake of argument, that section 6343(b) should be given the peculiar application that petitioner urges upon us, it would not follow that, having returned petitioner's property to him, respondent would be barred from adjusting petitioner's 1990 tax account accordingly.

At bottom, this is a classic case of petitioner's wishing to have his cake and eat it too, while pretending that the Government got it.  The statute does not support this result; logic, equity, and common sense oppose it.

All other arguments raised by petitioner and not expressly discussed herein are without merit or unnecessary to reach.

To reflect the foregoing,

Decision will be

entered for respondent.